UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DAVID JOH, et al.,<br><br>   Plaintiffs,<br><br> v.<br><br>AMERICAN INCOME LIFE INSURANCE COMPANY,<br><br>   Defendant. | Case No. 18-cv-06364-TSH<br><br>**ORDER RE: RENEWED MOTION FOR FINAL SETTLEMENT APPROVAL**<br><br>Re: Dkt. No. 60 |

Before the Court is the Plaintiffs' Renewed Motion for Final Settlement Approval. ECF No. 60. For the reasons set forth below, the Court **DENIES** the Motion.

## I.   BACKGROUND

The Court discussed the factual and procedural history of this matter at length in its January 9, 2020 order (ECF No. 53) denying Plaintiff's initial Motion for Final Approval ("first motion") (ECF No. 42). There is no need to do so again here, as the Plaintiffs move for approval with the Settlement Agreement ("SA") unchanged.

Reviewing the SA the first time around, the Court found that the proposed class met the requirements for certification under Federal Rule of Procedure 23, meaning the putative class was sufficiently numerous that joinder of all members would be impracticable; there were questions of law or fact common to the class; the Plaintiffs' claims were typical of those of the class; and the class representatives would fairly and adequately protect the interests of the class. *See Joh v. Am. Income Life Ins. Co.*, No. 18-CV-06364-TSH, 2020 WL 109067, at *3-5 (N.D. Cal. Jan. 9, 2020). The Court found that adequate notice had been given to class members as required by Rule 23(e)(1). *Id.* at *5. Turning to the requirements of Rule 23(e)(2) for approval of the SA, the Court found that the agreement met the first three factors: the class representatives and their counsel had

adequately represented the class[1] (Rule 23(e)(2)(A)), the proposed settlement was negotiated at arm's length (Rule 23(e)(2)(B)), and the proposed settlement amount was adequate in light of the risks and costs of continued litigation (Rule 23(e)(2)(C)). *Id.* at *6-8.

On the last factor, equitable treatment of class members (Rule 23(e)(2)(D)), things hit a roadblock. The Court noted that by Plaintiffs' own estimates, trainees who never became agents (the "trainee-only" claims) would come away with approximately only 2% of the settlement fund amount, even though their claims constituted at least 12.6% of the total estimated liability. *Id.* at *9-10. In particular, trainee-only waiting-time penalties made up approximately 25% of waiting-time claims, which claims made up nearly 50% of the estimated total liability in the case. *Id.* And waiting-time claims accrued once per trainee or agent, meaning those percentages were unaffected by how long an individual worked for American Insurance Life Insurance Company ("AIL"). Yet the SA would distribute funds based on weeks worked, and since agents had racked up the majority of workweeks simply by having worked longer, they would absorb most of the trainee-only claims. *Id.* The Court found this disparity compounded by the fact that Plaintiffs had assessed that trainees' claims were stronger and easier to prove than agent claims. *Id.* In sum, Plaintiffs had admitted that trainee-only claims were easier to prove and, importantly, were more valuable than agents', and yet agents would come out in the end with almost the entirety of the value of the settlement. *Id.* at * 10. Such an arrangement, the Court concluded, was not equitable and fair. *Id.* Accordingly, the Court found it could not approve the SA and denied Plaintiffs' motion. *Id.*

At the hearing on the first motion for approval (the "motion hearing"), the undersigned advised the parties that if they intended to file a new motion for approval of the SA, they should consider whether the SA needed to be restructured to address the disparity associated with the waiting-time claims. The undersigned cautioned that, unless there was something the Parties could show he was missing about the strength and value of the trainee-only waiting time claims, or the way the SA allocated the value of the settlement to class members, he didn't see how you

---

[1] In making this finding, the Court explicitly rejected Objectors' argument that Plaintiffs and their counsel had engaged in a "reverse auction" settlement.

could equitably allocate that value based on workweeks rather than per person.

## II. ANALYSIS

### A. The Waiting-Time Claims

Plaintiffs filed their Renewed Motion for Final Settlement Approval on February 20, 2020. They don't present a reworked or improved SA. Instead, they attempt to repackage the same agreement in a new way in the hopes of getting approval.

Plaintiffs now argue that their California Labor Code § 203 waiting-time claims are risker than their other claims, and that the § 203 claims are riskier for trainees than they are for agents and even riskier yet for trainees who never became agents. They argue that the trainee-only claims should be reduced by 75% to account for the additional difficulty that would come in proving those class members' claims. This argument don't pass muster.

First, Plaintiffs emphasize that the § 203 claim is not a standalone claim but is instead dependent on the success of other claims. *See Ling v. P.F. Chang's China Bistro, Inc.*, 245 Cal. App. 4th 1242, 1261 (2016) ("Because a section 203 claim is purely derivative of 'an action for the wages from which the penalties arise,' it cannot be the basis of a fee award when the underlying claim is not an action for wages.") (quoting Cal. Lab. Code § 203(b)). The waiting-time claim, Plaintiffs argue, "therefore incorporates the risk to the Class inherent in the other claims." Renewed Mot. at 6. This point begs the question, "So what?" Even if the waiting-time claims are dependent on other claims, Plaintiffs represented in their first motion, aware then that the waiting-time claims were derivative, that "the legal claims related to the training periods are *comparatively easier to demonstrate* and more valuable than the claims related to the non-training employment period." Mot. for Approval at 6 (emphasis added), ECF No. 42; *see also* Decl. of Steven M. Tindall in Supp. of Mot. for Approval ("Tindall Decl. 1") ¶ 10, ECF No. 42-1 ("Plaintiffs' Counsel was informed by their belief that the legal claims related to the time Class Members were in training with AIL were comparatively easier to demonstrate . . . in part because Class Members received no pay for their time spent in training, which Plaintiffs' Counsel believed to be a clear violation of minimum wage laws."). Even though the waiting-time claims are derivative, the trainees' waiting-time claims are derivative of something stronger than the agents'

3

waiting time claims are.

Plaintiffs also now contend that AIL has a "colorable argument" that it had a "good faith" belief that Class Members were not entitled to wages. Renewed Mot. at 6. "A good faith belief in a legal defense will preclude a finding of willfulness" necessary for proving a violation of § 203. *Armenta v. Osmose, Inc.*, 135 Cal. App. 4th 314, 325 (2006). "To demonstrate its good faith," Plaintiffs now argue, "AIL could argue that *Class Members* were properly classified as independent contractors under caselaw and newly passed legislation (AB5)." Renewed Mot. at 6 (emphasis added) (citing Cal. Lab. Code § 2750.3(b)(1) (exempting a person "licensed by the Department of Insurance" from classification as an "employee" under the independent contractor test). Plaintiffs also contend that "AIL could also argue that *Class Members* qualify as 'outside salespersons' who are exempt from wage requirements, as sales agents frequently worked in the field, away from any centralized office." Renewed Mot. at 6 (emphasis added). It's surprising that Plaintiffs would raise these points now in trying to argue that trainees' claims were weaker, because earlier they raised the exact same points in arguing that *agents'* claims were weaker. *See, e.g.*, Mot. for Approval at 13 ("[A]lthough Plaintiffs' Counsel maintain that AIL misclassified its agents as independent contractors, AIL disagrees and has raised colorable arguments to that effect."); Tindall Decl. 1 ¶ 10 ("Although trainees would need to demonstrate that their training is not akin to vocational school, sales agents would need to show that they were misclassified as independent contractors and that the outside salesperson exemption under California law does not exempt them from Labor Code protections."); Decl. of Michael A. Gould ("Gould Decl.") ¶ 10, ECF No. 42-9 ("Liability is difficult to prove in this case. AIL presented case law supporting its position that sales agents are typically recognized as independent contractors in the industry."). Plaintiffs don't explain their newfound concern that the independent contractor or outside salesperson issues might threaten their trainee claims. And even if Plaintiffs were genuinely of a different mind on this issue, that wouldn't mean they got it wrong the first time. AIL also thought that the independent contractor argument made the *agents'* claims weaker. Def's' Resp. to Class Member Objections (ECF No. 48) at 13 ("*[T]hose . . . that both trained and contracted* as sales agents faced other hurdles, including . . . the risk that the outside sales agent exemption set forth in

4

1  the applicable California wage order would gut their Labor Code claims for the time in which they
2  had contracted as agents.") (emphasis added) (quoting IWC Wage Order Four § I(C) at § 2(M) (an
3  outside salesperson is "any person, 18 years of age or over, who customarily and regularly works
4  more than half the working time away from the employer's place of business selling tangible or
5  intangible items or obtaining orders or contracts for products, services or use of facilities.")).

6  Plaintiffs also return to the point that trainees would have to prove they were employees
7  under the *Portland Terminal* test in order to succeed on their claims. *See Harris v. Vector Mktg.*
8  *Corp.*, 753 F. Supp. 2d 996, 1005-06 (N.D. Cal. 2010) (discussing factors in *Portland Terminal*
9  test). Because of this, they assert, trainees' waiting-time claims were riskier, and trainee-only
10 claims riskier still. But Plaintiffs accounted for the *Portland Terminal* test originally, and yet still
11 concluded that trainees' claims were easier to prove and more valuable:

> Further, to calculate the Settlement shares, the training workweeks are double-weighted because, under Plaintiffs' assessment, claims related to training are comparatively easier to demonstrate than those related to post-training work for AIL. For example, while trainees would be required to prove that their training is compensable under the factors set out in *Portland Terminal* and related cases, sales agents additionally would be required to establish that they are not subject to the arbitration provision in their Agent Contracts and then also show that they were improperly classified as independent contractors under both caselaw and newly-passed legislation and that the "outside salesperson" exemption does not apply to them.

18 Mot. at 16; *see also* Tindall Decl. 1 ¶ 10 ("Although trainees would need to demonstrate that their
19 training is not akin to vocational school [(a *Portland Terminal* factor)], sales agents would need to
20 show that they were misclassified as independent contractors and that the outside salesperson
21 exemption under California law does not exempt them from Labor Code protections."). Plaintiffs
22 don't attempt to explain this sudden about face on the strength of trainees' claims.

23 Lastly, it is telling that the SA still double-weights training workweeks, and Plaintiffs still
24 explain that those claims "more heavily weighted . . . to reflect their relative strength." Reply at 6,
25 ECF No. 62. Thus, even after working to convince the Court that trainees' claims are weaker,
26 Plaintiffs still admit that they're stronger.

27 In sum, Plaintiffs' proffered reasoning for disregarding the value of trainee-only waiting-
28 time claims is unconvincing. The Court invited Plaintiffs to provide additional briefing if it would

1  serve to highlight for the Court something it missed in denying the first motion to approve the SA. The renewed motion did not achieve that.

### B.     Failure to Provide Notice

Objectors assert that Plaintiffs must issue notice of the Renewed Motion before the Court can approve the SA.  They argue that "the [SA] now includes resolution of a $5 million meal and rest break claim on behalf of Agents who have not been advised of the value of this claim and would not know that this claim is being resolved on their behalf if they investigated when they received the notice of the initial fairness hearing date."  Opp'n to Final Approval at 11, ECF No. 61.  Because the Court denies Plaintiffs' Renewed Motion on other grounds, it need not decide whether Plaintiffs provided sufficient notice at this juncture.

### III.     CONCLUSION

For the foregoing reasons, the Court **DENIES** Plaintiffs' Renewed Motion for Final Settlement Approval.

**IT IS SO ORDERED.**

Dated: April 15, 2020

_____
THOMAS S. HIXSON
United States Magistrate Judge