Michael A. Gould, Esq.  (SBN 151851)
Aarin A. Zeif (SBN 247088)
**GOULD & ASSOCIATES**
17822 E. 17th Street, Suite 106
Tustin, California 92780
Telephone: (714) 669-2850
Facsimile: (714) 544-0800
Michael@wageandhourlaw.com
Aarin@wageandhourlaw.com

Steven M. Tindall (SBN 187862)
Amanda M. Karl (SBN 301088)
**GIBBS LAW GROUP LLP**
505 14th Street, Suite 1110
Oakland, CA 94612
Tel: (510) 350-9700
Fax: (510) 350-9701
smt@classlawgroup.com
amk@classlawgroup.com

*Attorneys for Plaintiffs and the Proposed Class*

# UNITED STATES DISTRICT COURT FOR THE

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DAVID JOH, *et al.*,<br><br>            Plaintiffs,<br><br>    vs.<br><br>AMERICAN INCOME LIFE INSURANCE COMPANY, *et al.*,<br><br>            Defendants. | Case No. 3:18-CV-06364-TSH<br><br>**PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF REVISED CLASS ACTION SETTLEMENT**<br><br>Date:  September 10, 2020<br>Time: 10:00 A.M.<br>Judge: Hon. Thomas S. Hixson |

1

## **TABLE OF CONTENTS**

2   I.    INTRODUCTION ................................................................................................ 1

3   II.   BACKGROUND ................................................................................................. 2

4   III.  TERMS OF THE PROPOSED SETTLEMENT ................................................. 5

5     A. Proposed Class .............................................................................................. 5

6     B. Benefits to the Settlement Class .................................................................... 5

7     C. Calculation of Benefits ................................................................................. 5

8     D. PAGA Penalties ............................................................................................ 6

9     E. Incentive Awards .......................................................................................... 6

10    F. Attorneys' Fees ............................................................................................. 6

11    G. Notice Plan ................................................................................................... 7

12    H. CAFA Notice ................................................................................................ 7

13    I. Objection, Opt-Out, and Dispute Procedures ............................................... 7

14    J. Release of Claims ......................................................................................... 8

15    K. Funding of Settlement and Payment ............................................................. 8

16    L. Administration of Settlement ........................................................................ 8

17  IV.   ARGUMENT ..................................................................................................... 9

18    A. The Proposed Settlement Merits Preliminary Approval ................................ 9

19      1.   The proposed Settlement merits approval ................................................ 9

20    B. Certification of the Class will be appropriate for settlement purposes .......... 12

21      1.   The Settlement Class satisfies the requirements of Rule 23(a) ............... 12

22      2.   The Settlement Class meets the requirements of Rule 23(b)(3) ............... 14

23      3.   The proposed Class Notice provides the best method of notice practicable ...... 14

24    C. The Court should set a schedule for final approval ........................................ 15

25  V.    CONCLUSION ................................................................................................. 15

26

27

28

NOTICE OF MOTION AND MOTION FOR PRELIMINARY SETTLEMENT APPROVAL
CASE NO. 3:18-CV-06364-TSH

# <u>TABLE OF AUTHORITIES</u>

Page(s)

Cases

*Amchem Prods., Inc. v. Windsor*,
    521 U.S. 591 (1997)..................................................................................................... 14, 15
*In re Volkswagen "Clean Diesel" Mktg., Sales Practices, & Prod. L*iab. Litig.,
    895 F.3d 597 (9th Cir. 2018) ........................................................................... 9, 10, 11
*Nen Thio v. Gengi, LLC*,
    14 F. Supp. 3d 1324 (N.D. Cal. 2014) ...................................................................... 11
*O'Connor v. Uber Techs., Inc.*,
    201 F. Supp. 3d 1110 (N.D. Cal. 2016) .................................................................... 12
*Parra v. Bashas', Inc.*,
    536 F.3d 975 (9th Cir. 2008) ...................................................................................... 12
*Parsons v. Ryan*,
    754 F.3d 657 (9th Cir. 2014) ...................................................................................... 13
*Pineda v. Bank of Am., N.A.*,
    50 Cal. 4th 1389 (2010) ..................................................................................... 5, 8, 9

Statutes

28 U.S.C. § 1711(2) ........................................................................................................ 7
28 U.S.C. § 1715(b) ........................................................................................................ 7
California Labor Code § 203 ................................................................................... 3, 4, 5

Rules

Fed. R. Civ. P. 23 ................................................................................................... *passim*

NOTICE OF MOTION AND MOTION FOR PRELIMINARY SETTLEMENT APPROVAL
CASE NO. 3:18-CV-06364-TSH

<u>**NOTICE OF MOTION AND MOTION**</u>

**TO ALL PARTIES AND THEIR COUNSEL OF RECORD:** PLEASE TAKE NOTICE that on September 10, 2020, at 10:00 a.m., or as soon thereafter as the matter may be heard before the Honorable Thomas S. Hixson in the United States District Court for the Northern District of California, Plaintiffs David Joh, David Hamilton, and Bridget Smith will move, and hereby do move, for preliminary approval of the revised class action settlement they reached with Defendant American Income Life Insurance Company in this case.

Plaintiffs seek an order (a) preliminarily approving the revised Settlement Agreement attached as Exhibit A to the accompanying Declaration of Steven M. Tindall as fair, adequate, and reasonable; (b) certifying the proposed Class for settlement purposes only; (c) approving the class notice and notice plan set forth in the Settlement Agreement; (d) appointing KCC, LLC, as the Settlement Administrator; and (e) setting a schedule for final settlement approval.

Plaintiffs' motion is based on this Notice of Motion and Motion; the Declaration of Steven M. Tindall and attachments thereto (including the revised Settlement Agreement itself); the [Proposed] Order Granting Motion for Preliminary Approval; and all other papers filed and proceedings held in this action.

<u>**MEMORANDUM OF POINTS AND AUTHORITIES**</u>

**I.    <u>INTRODUCTION</u>**

In this class and representative action, Plaintiffs David Joh, David Hamilton, and Bridget Smith allege that they and others were not paid properly while they were trainees and insurance salespeople for Defendant American Income Life Insurance Company ("AIL"). After investigating Plaintiffs' claims, briefing a motion to compel arbitration, participating in a full-day mediation, and negotiating the terms of the detailed settlement agreement, Plaintiffs settled their claims and those of a proposed Class of approximately 7,000 AIL trainees and insurance salespeople for a non-reversionary payment by AIL of $5,750,000.

The Court approved of much of that (previous) version of the settlement. It granted preliminary settlement approval, and notice was sent to class members. After that, in the context of Plaintiffs' final approval motion, the Court certified a settlement class, approved of the class

representatives and the settlement amount, and concluded that the settlement had been negotiated at arm's-length.  The Court noted, however, that the settlement's main shortcoming related to the distribution of the settlement fund to class members; specifically, the Court concluded that the proposed distribution to trainees who never became contracted agents did not sufficiently account for potential waiting time penalties included in Plaintiffs' estimated damages.

Since the Court's denial of final approval of that earlier settlement, the parties have worked diligently to adjust the settlement distribution method and now submit a Settlement that they believe addresses the Court's concerns.  The revised Settlement now includes two sub-funds:  one fund specific to waiting time penalties, which will be divided on a *per-person* basis among those class members with potential waiting time penalty claims, and one fund related to the remaining Labor Code claims, which will be divided on a *per-workweek* basis among all class members.  What's more, the size of the waiting-time penalties sub-fund accurately reflects the proportion of waiting time penalties in Plaintiffs' total estimated damages.  The rest of the Settlement remains much the same as the settlement submitted previously.

Because the Settlement, as revised, is fair, adequate, and reasonable, and includes an equitable distribution of proceeds, Plaintiffs respectfully request that the Court (a) preliminarily approve the settlement, (b) certify the Class for settlement purposes, (c) direct notice to the Class, (d) appoint Class Counsel under Rule 23(g), and (e) set a schedule for final settlement approval where the Class Members may be heard regarding the merits of the Settlement.

## II.    **BACKGROUND**

This Settlement is on behalf of a class of California insurance sales agents and agent trainees who were affiliated with AIL.  Much of the factual and procedural history of this case is outlined in Plaintiffs' prior Motion for Preliminary Settlement Approval.  *See* Dkt. # 39 at 2-5.  To summarize, Plaintiff Joh originally filed this case, and Plaintiffs Hamilton and Smith originally filed suit in a related case—*Hamilton v. American Income Life Ins. Co.*, Case No. 4:18-cv-07535-KAW, pending before Hon. Kandis Westmore.  Plaintiff Joh amended his complaint, adding Plaintiffs Hamilton and Smith and their claims to his suit to facilitate settlement in this action, the earlier-filed case.  Dkt. #

30.  Plaintiffs Hamilton and Smith continue to update Judge Westmore on this case's status.  *See, e.g.*, *Hamilton*, Dkt. # 36.

Last year, Plaintiffs agreed to settle their claims (and those of the proposed class) with AIL and filed a Motion for Preliminary Approval of the settlement, which would have resolved all claims in this case and related cases.  That settlement is similar to the Settlement submitted for approval here in all respects except for the allocation of payments to class members, which Plaintiffs will describe in more detail below.  Declaration of Steven M. Tindall in Support of Plaintiffs' Motion for Preliminary Approval of Revised Class Action Settlement ("Tindall Decl.") ¶¶ 5-6.  The Court granted preliminary approval to the previous settlement (Dkt. # 41), and notice of that settlement was provided to the Class.  At the final approval stage, the Court raised concerns about the equitable distribution of funds to class members (Dkt. # 53), and ultimately denied final approval following supplemental briefing (Dkt. # 65).  In its first order on final approval, the Court found that (a) the settlement class (similarly defined as the class proposed here) met the requirements for certification under Federal Rule of Civil Procedure 23 (Dkt. # 53 at 5-8), (b) the class was adequately represented (*id.* at 11), (c) the settlement was negotiated at arm's length (*id.* at 12-13)*,* and (d) the overall settlement amount of $5.75 million (again, the same as here) was adequate in light of the risks of continued litigation (*id.* at 13-14).

Following the original and supplemental briefing of the final approval motion, the Court denied final approval because the Court believed the settlement did not treat class members equitably under Federal Rule of Civil Procedure 23(e)(2)(D).  Dkt. # 65 at 2.  In particular, the settlement proceeds were to be calculated based on the number of workweeks a trainee/agent worked at AIL.  A significant proportion of Plaintiffs' estimated damages, however, stemmed from potential waiting time penalties under California Labor Code § 203, which are calculated on a *per-person* rather than a *per-workweek* basis.  As a result, the Court explained, class members who were trainees and never became agents would not receive an amount proportional to Plaintiffs' estimated value of their claims.  Dkt. # 65 at 2-6.

Since the Court's ruling, the parties have worked diligently to fashion an allocation method that addresses the Court's concerns.  In this revised Settlement, there are now two sub-funds to be

distributed to Class Members:  an "All Trainees and Agents Fund," which will be distributed on a per-workweek basis to all class members under the same formula used in the prior iteration of the settlement, and a "Terminated Trainees and Agents Fund," which will be divided on a per-person basis among only those class members potentially entitled to § 203 penalties—that is, class members who discontinued training or working for AIL within the statute of limitations for that claim.

The parties allocated the Net Settlement Fund between these two funds by recalculating Plaintiffs' estimated damages with the benefit of more definite class member data.[1]  Plaintiffs calculated their total estimated damages using the same formulas they previously used.  The updated damages estimates are as follows:

- $13,540,560 for § 203 waiting-time penalties;
- $684,486 for trainee missed meal and rest breaks;
- $5,196,906 for agent missed meal and rest breaks;
- $475,500 for § 226 itemized wage-statement penalties;
- $1,062,600 for chargebacks;
- $4,724,460 for expense reimbursement; and
- $9,126,480 for unpaid minimum wages.

These estimated damages total $34,810,992.  Tindall Decl. ¶¶ 7-14.  Using these estimated damages, the parties ensured that the proportion of the Net Settlement Fund allocated to the Terminated Trainees and Agents Fund was the same as the proportion of Plaintiffs' total estimated damages attributable to § 203 penalties.  Specifically, Plaintiffs calculated the proportion of the total estimated damages attributable to § 203 penalties by dividing that amount ($13,540,560) by the total estimated damages ($34,810,992), which equals approximately 38.897%.  The amount in the Terminated Trainees and Agents fund was determined by multiplying this percentage by the Net Settlement Fund to be distributed to class members ($4,127,531), which equals $1,605,500.96.   Tindall Decl.

---

[1] The class in the original settlement included trainees and agents whose training or work "began before the date of preliminary approval of [that] Settlement." Dkt. # 39 at 5.  Here, the parties can now provide a definitive end date to the class period:  class members include those whose training or work "began before August 16, 2019 (the date of preliminary approval of the earlier version of this Settlement)." SA ¶ II(D).  With the benefit of a specific end date, Plaintiffs were able to calculate potential class member damages more precisely and more accurately than they could before.  Tindall Decl. ¶ 6.

NOTICE OF MOTION AND MOTION FOR PRELIMINARY SETTLEMENT APPROVAL
CASE NO. 3:18-CV-06364-TSH

¶ 7-15, Ex. A (Settlement Agreement ["SA"]) ¶ III(F). The remainder of the Net Settlement Fund ($2,522,030.04) will be placed in the "All Trainees and Agents Fund," to be distributed to all class members on a workweek basis. SA ¶ III(F).

## III.    TERMS OF THE PROPOSED SETTLEMENT

### A.    Proposed Class

As in the previous settlement, the Settlement defines the Class as "all individuals who trained to become and/or worked as sales agents in California for Defendant during the last four years prior to the filing of the original Complaint in *Joh* and whose training and/or work began before August 16, 2019 (the date of preliminary approval of the earlier version of this Settlement)." SA ¶ II(D). The class period is September 12, 2014 through August 16, 2019. *Id.* ¶ II(G).

### B.    Benefits to the Settlement Class

As in the previous settlement, Settlement Class Members shall each receive a cash award from the Net Settlement Fund, without having to file a claim form. SA ¶ II(O); Tindall Decl. ¶ 18.

### C.    Calculation of Benefits

Each Settlement Class Member's share of the Net Settlement Fund will be calculated based on two factors: (a) when and whether they stopped working for AIL, and (b) the number of workweeks allocated to them.

First, each class member whose affiliation with AIL terminated between September 12, 2015 and August 16, 2019[2] will receive an equal share of the Terminated Trainees and Agents Fund. SA ¶ III(F). Second, each class member will be entitled to a share of the All Trainees and Agents Fund based on the weeks they trained and worked as trainees and agents during the Class Period. The distribution method for this fund—including the weighting of training weeks as essentially worth two weeks each—remains unchanged from the last iteration of the settlement's workweek-based distribution method. *See id.*; Dkt. # 39 at 5-6 (description from Plaintiffs' prior preliminary approval brief); Tindall Decl. ¶ 16. Before the Net Settlement Fund is distributed, each class member will

---

[2] This timeframe reflects the three-year statute of limitations period for § 203 penalties. *Pineda v. Bank of Am., N.A.*, 50 Cal. 4th 1389, 1398 (2010).

have the opportunity to challenge both their terminated status and the number of workweeks

allocated to them.  Tindall Decl. Ex. B ("Information Form").

### D.    PAGA Penalties

Plaintiffs' operative complaint alleges claims for penalties under PAGA.  Dkt. # 30 ¶¶ 90-98.

As in the prior settlement, the parties agreed to allocate $100,625, or 1.75% of the Settlement

Amount, for PAGA penalties, subject to Court approval.  Pursuant to PAGA, 75% of this amount (or

$75,469) shall be paid to the LWDA, and 25% (or $25,156) shall be distributed to the Settlement

Class Members as part of the Net Settlement Fund.  SA ¶ III(K).  The parties submitted the Proposed

Settlement to the LWDA concurrently with the filing of this motion.[3]  Tindall Decl., ¶ 19.

### E.    Incentive Awards

As provided in the previous version of the settlement, Plaintiffs intend to move for Class

Representative incentive awards in the amount of $7,500 each for Plaintiffs Joh, Hamilton, and

Smith for the time and effort they spent in bringing these cases and for their willingness to come

forward to litigate against AIL.  SA ¶ III(I).  Plaintiffs previously filed support for these incentive

awards and may supplement their submissions if preliminary approval is granted.  *See* Dkt. ## 42 at

23-24, 42-7, 42-8.  Should the Court award less than $7,500 per Plaintiff in incentive awards, the

difference will be included in the amount to be distributed to the Settlement Class Members.  SA

¶ III(I).

### F.    Attorneys' Fees

If the Settlement is granted preliminary approval, Plaintiffs intend to move for attorneys' fees

and costs in an amount that will not exceed the Ninth Circuit's benchmark of 25% of the value of the

Settlement Fund (or a total of $1,437,500), plus litigation costs of $20,996.99.  *See* Dkt. # 42-1

¶¶ 44-45; SA ¶ III(J).  These are the same amounts for fees and costs that Plaintiffs' Counsel

requested previously.  Dkt. # 42 at 17.  Any fees and costs awarded by the Court will be paid out of

the Settlement Fund.  Should the Court award less than the requested amount, the difference will be

paid to the Settlement Class Members.  SA ¶ III(J).  If the Court grants preliminary approval,

---

[3] The previous settlement agreement was also submitted to LWDA, and the LWDA did not notify
the parties of any objection to either the $5,750,000 settlement amount or the settlement agreement's
PAGA penalty allocations.  Tindall Decl. ¶ 19.

Plaintiffs' Counsel will file a revised motion for attorneys' fees, costs, and Plaintiffs' incentive payments in advance of final approval. *See* Dkt. ## 42 at 17-23; 42-1 ¶¶ 5-13, 31-45; 42-9 ¶¶ 3-5, 17-25.

### G.    Notice Plan

The notice plan under the Settlement is the same as it was under the prior settlement, and will include mail, email, and a website. *Compare* SA ¶ III(M) *with* Dkt. # 39-2 ¶ III(M). The parties updated the Notice to reflect the new distribution plan. Tindall Decl., Ex. A.A ("Notice"). The Court approved this notice plan and its implementation with the prior iteration of the settlement. Dkt. ## 41 at 3; 53 at 8-9. AIL agreed to pay for any additional costs of notice caused by the need to notify Class Members of the revised Settlement. SA ¶ II(O). This ensures that Class Members do not receive less in settlement funds because notice needs to be sent a second time.

### H.    CAFA Notice

Under the Settlement, AIL is responsible for timely compliance with Class Action Fairness Act ("CAFA") notice requirements. SA ¶ III(M)(6). CAFA requires that notice of a class action settlement be given to the appropriate government officials identified in the statute. *See* 28 U.S.C. § 1715(b) (requiring notice served within ten days after a proposed class action settlement is filed in court). Because the term "class action" includes "any civil action filed . . . under rule 23 . . . that is removed to a district court of the United States," 28 U.S.C. § 1711(2), and because *Joh* was removed to this Court, notice of the settlement under 28 U.S.C. § 1715(b) is required here.

### I.    Objection, Opt-Out, and Dispute Procedures

As with the previous settlement, Class Members will have 60 days from the mailing date of the Notice to (1) dispute the number of workweeks attributed to them, (2) opt out of the Settlement Class, or (3) object to the Settlement. SA ¶¶ III(F), (N), (O). A Class Member may also dispute his or her terminated status. Information Form. Any Class Member may opt out of the Settlement by sending a written request to the Settlement Administrator within 60 days of the mailing of the Notice. SA ¶¶ III(N)(1-2). Similarly, any Class Member may object to the Settlement in a written submission to the Court, to be filed within 60 days of the mailing of the Notice. *Id.*, ¶ III(O)(1-2). If a Class Member wishes to dispute the number of workweeks or her terminated status, the Class

Member may submit a written challenge and documentary evidence to the Settlement Administrator. *See* Information Form.  Plaintiffs' Counsel and Defense Counsel will work with the Settlement Administrator to evaluate whether the presumptive workweeks should be exceeded or if the Class Member's terminated status should be amended.  In the event of a disagreement, the Settlement Administrator will make the final decision, which will not be appealable.  SA ¶ III(F).

### J.    Release of Claims

If the Settlement is finally approved, Plaintiffs and all Class Members will release claims that were brought by Plaintiffs or that reasonably arise out of the facts alleged in the operative complaint. As with the previous settlement, the parties intend the release to encompass all claims asserted in the Second Amended Complaint in *Joh* (Dkt. # 30), which itself encompasses all claims in the third live related case,[4] *Golz v. American Income Life Insurance Co*., Case No. 2:18-cv-9879 (C.D. Cal.).  SA ¶ III(R)(1); Dkt. # 53 at 15 ("Thus, the *Hamilton* complaint encompasses the same California Labor Code violations vis-a-vis trainees that were asserted in *Golz*.").

### K.    Funding of Settlement and Payment

Defendant has agreed to pay $5,750,000, which includes any payments for attorneys' fees, costs, incentive awards, administration costs, and a PAGA payment to the LWDA.  SA ¶ II(Y).  AIL transferred $1,000,000 to the Escrow Fund following the Court's entry of preliminary approval in the prior settlement.  *Id.* ¶ III(C).  Defendant has further agreed to transfer the remaining $4,750,000 to the Escrow Fund within seven business days of the Effective Date.  *Id*.  The other pertinent details regarding funding the Settlement and issuing payment to class members remain unchanged since the prior iteration of the settlement, including mailing checks to Class Members and a *cy pres* recipient, subject to the Court's approval.  Tindall Decl. ¶18; Dkt. # 39 at 8-9 (prior briefing summarizing funding and payment); 39-8 (declaration from Legal Aid at Work's President).

### L.    Administration of Settlement

The proposed Settlement Administrator, KCC, LLC, previously approved by the Court to be the Settlement Administrator here, is experienced in the field and was recommended by the parties

---

[4] As the Court previously noted, the fourth and final related case, *Putros v. AIL*, Case No. 30-2019-01044772-CU-OE-CXC, was dismissed with prejudice by the Orange County Superior Court.  Dkt. # 53 at 5 n.1.

only after comparing bids from five well-known administrators.  Dkt. ## 39-1 ¶ 20; 39-7 (KCC's

C.V.).  The parties respectfully request that the Court approve KCC as the Settlement Administrator,

as it did previously.  Dkt. # 41 ¶ 10.  Fees and expenses for the Settlement Administrator will come

out of the Settlement Fund up to $55,000.  SA ¶ II(O).  As noted above, Defendant will pay

separately to KCC any additional settlement administration costs occasioned by sending the revised

Notice.  *Id.*

## IV.   ARGUMENT

### A.    The Proposed Settlement Merits Preliminary Approval

Under Rule 23(e)(1)(B) of the Federal Rules of Civil Procedure, "[t]he court must direct

notice in a reasonable manner to all class members who would be bound by the proposal if giving

notice is justified by the parties' showing that the court will likely be able to:  (i) approve the

proposal under Rule 23(e)(2); and (ii) certify the class for purposes of judgment on the proposal."

Below, Plaintiffs describe why preliminary approval should be granted, as it previously was, and

why the updated Notice should be sent to Settlement Class Members.

This Court previously certified this Settlement Class and concluded that this Settlement's

framework was reasonable and adequate.  As described below, the parties' revised distribution

method should alleviate any fairness concerns the Court expressed at the final approval stage.

#### 1.    The proposed Settlement merits approval

Evaluating the Settlement under the factors required under Rule 23(e)(2) demonstrates that it

is fair, reasonable, and adequate.  *In re Volkswagen "Clean Diesel" Mktg., Sales Practices, & Prod.

Liab. Litig.*, 895 F.3d 597, 611 (9th Cir. 2018); Fed. R. Civ. P. 23(e)(2), 2018 Advisory Committee

Notes.

##### a.    The class representatives and class counsel have adequately
##### represented the class

The first factor is whether "the class representatives and class counsel have adequately

represented the class."  Fed. R. Civ. P. 23(e)(2)(A).  The Court previously determined that Plaintiffs

and Class Counsel have done so when it granted preliminary approval of the prior iteration of this

Settlement (Dkt. # 41 ¶ 5), and in its first order on final approval (Dkt. # 53 at 11-12).  Both

9

Plaintiffs and Class Counsel have continued to zealously represent the class while renegotiating the distribution mechanisms of this Settlement with AIL.  Tindall Decl. ¶ 17.

### b.    The proposed settlement was negotiated at arm's length

The second Rule 23(e)(2) factor asks the Court to confirm that the proposed settlement was negotiated at arm's length.  Fed. R. Civ. P. (e)(2)(B).  Again, the Court already so determined—based on the parties' full-day mediation, confirmatory discovery, and counsel's prior experience and evaluation of the strengths and risks of Plaintiffs' claims and AIL's defenses.  Dkt. ## 41 ¶ 5; Dkt. # 53 at 12-13.  Since these findings, the parties have negotiated the distribution mechanism further, including significant verification that the new distribution plan adequately addresses the Court's concerns.  Tindall Decl. ¶¶ 5-17.

Also, even though both parties have expended significant time renegotiating the Settlement's distribution mechanism—and even though it will cost more than originally anticipated to re-notice the class—the parties agreed that AIL would pay for any additional settlement administration costs separate from the Settlement fund, and that Plaintiffs' Counsel will request no additional fees or costs beyond what they had previously requested.  *Id*. ¶ 18.

### c.  The class relief surpasses the bar for adequacy

The third factor is whether the relief provided for the class is "adequate" under Fed. R. Civ. P. 23(e)(2)(C).  This Court already ruled that the $5.75 million relief this Settlement provides is adequate in light of the "risks and costs" of continued litigation.  Dkt. ## 41 ¶ 5; 53 at 13-14.  With the benefit of more precise Class Member data, Plaintiffs estimate that the $5.75 million Settlement amounts to approximately 16.5% of Plaintiffs' total estimated damages—remaining well within the range the Court previously noted.  *Id*. (collecting cases and noting risks).  Tindall Decl. ¶ 14.

### d.  The Settlement treats all Class Members equitably

The final Rule 23(e)(2) factor is whether the proposed settlement "treats class members equitably relative to each other."  Fed. R. Civ. P. 23(e)(2)(D).  On this point, the Court previously noted that the prior workweek-only distribution method was unfair to trainees who never became agents.  Specifically, trainee-only class members' waiting time penalties—which do not accrue by workweek but instead on a per-person basis—accounted for a larger percentage of Plaintiffs'

estimated damages than the trainee-only class members would actually receive under a workweek-only distribution method.  Dkt. # 53 at 15-18.

To better align the relative importance of waiting time penalties in Plaintiffs' estimated damages with the distribution to those who would be entitled to such penalties, the parties agreed to split the Net Settlement Amount into two sub-funds:  the All Trainees and Agents Fund, which will be distributed on a workweek basis as outlined in the prior iteration of the settlement, and the Terminated Trainees and Agents Fund, which will be divided evenly among all class members who would be entitled to § 203 penalties.  SA ¶ III(F).  The proportion of the Net Settlement Fund to be placed in the Terminated Trainees and Agents Fund is equal to the proportion of Plaintiffs' estimated damages attributable § 203 penalties.  Tindall Decl. ¶15.  In other words, these penalties will be weighted as heavily in the distribution of funds to Class Members as they are in the calculation of Plaintiffs' estimated damages.  Each class member entitled to waiting time penalties (both trainees and agents) will receive approximately $313, *in addition to* their per-workweek entitlement, thereby addressing the Court's equitable treatment concerns regarding both waiting time penalties and trainee-only class members.  *Id.*

A court within this district adopted a similar structure in *Nen Thio v. Gengi, LLC*, 14 F. Supp. 3d 1324 (N.D. Cal. 2014).  The *Nen Thio* court found "no indication of unfair treatment to certain members of the class" where the settlement distribution included a "203 Fund" to be distributed evenly among all terminated employees, and two separate funds to be distributed pro rata to groups regardless of whether they had been terminated by the end of the class period (team leaders by hours worked, and all California employees by days worked).  *Id.* at 1330-31, 1335.  Here, too, there are several overlapping groups of class members—trainees who never became agents, trainees who became agents, agents who were never trainees, and any of those sub-groups who were terminated within the Labor Code § 203 liability period.  This revised settlement structure accounts for the significant proportion of trainee-only waiting time penalties within Plaintiffs' estimated damages, Dkt. # 53 at 17-18, while also accommodating greater injury over time for longer-time AIL trainees and agents.  Tindall Decl. ¶ 18.

NOTICE OF MOTION AND MOTION FOR PRELIMINARY SETTLEMENT APPROVAL
CASE NO. 3:18-CV-06364-TSH

### e.   The proposed PAGA payment is appropriate

In reviewing a class action settlement that also encompasses claims under PAGA, courts "evaluate the adequacy of compensation to the class *as well as* the adequacy of the settlement in view of the purposes and policies of PAGA." *O'Connor v. Uber Techs., Inc.*, 201 F. Supp. 3d 1110, 1134 (N.D. Cal. 2016) (emphasis in original).  The PAGA payment, which is equal to 1.75% of the total Settlement, remains unchanged since the prior iteration of the settlement, which the Court preliminarily approved.  Dkt. # 41; SA III(K); *see also* Dkt. # 39 at 19-20 (Plaintiffs' prior briefing on PAGA payment).  Seventy-five percent of the PAGA payment (or $75,469) will be distributed to the LWDA, as required by the Labor Code.  SA ¶ III(K).

### B.   Certification of the Class will be appropriate for settlement purposes

The second prerequisite for directing notice of settlement to a class is a determination that the settlement class is likely to meet the requirements for certification.  Fed. R. Civ. P. 23(e)(1)(B)(ii).  Certification requires that all four elements of Rule 23(a) and at least one prong under Rule 23(b) be satisfied.  In addition, the Court must assure itself that the proposed form of notice is the "best notice that is practicable under the circumstances."  Fed. R. Civ. P 23(c)(2)(B).

The Court previously found the requirements of Rule 23(a) and (b) to be met and certified the Class for settlement purposes.  Dkt. # 53 at 5-8.  As described below, the proposed Class remains the same, and the class certification requirements continue to be met.

### 1.   The Settlement Class satisfies the requirements of Rule 23(a)

### a.   The Settlement Class Members are too numerous to be joined

The proposed class must be so numerous that joinder of all members is impracticable.  Fed. R. Civ. P 23(a)(1).  With more precise data, the class now includes approximately 7,015 members, which is slightly more numerous than before, where the Court previously found numerosity.  Dkt. # 53 at 6; Tindall Decl. ¶ 6.

### b.   The action involves common questions of law or fact

Rule 23(a)(2) requires that there be "questions of law or fact common to the class."  The existence of "shared legal issues with divergent factual predicates is sufficient" to meet this commonality requirement.  *Parra v. Bashas', Inc.*, 536 F.3d 975, 978 (9th Cir. 2008).

1   The Court previously found commonality here, and with a virtually unchanged class

2   definition, it remains. Dkt. # 53 at 6. As the Court explained, Plaintiffs contend that the putative

3   Class was subject to the same overarching compensation policy with AIL—namely that trainees

4   were not compensated and insurance sales agents would be paid only in commissions on insurance

5   sales. Additionally, the document addressing the relationship between sales agents and AIL, the

6   Agent Contract, was common across Class Members. Key issues in the case, therefore—including

7   whether Class Members were properly classified as independent contractors, whether their training

8   was compensable, and whether AIL's policies violated provisions of the California Labor Code—

9   remain common to the class.

10          **c.   Plaintiffs' claims are typical of those of the Settlement Class**

11          Under Rule 23(a)(3)'s "permissive standards," a plaintiff's claims are considered typical "if

12   they are reasonably coextensive with those of absent class members; they need not be substantially

13   identical." *Parsons v. Ryan*, 754 F.3d 657, 685 (9th Cir. 2014). The Court previously found

14   Plaintiffs' claims here to be typical, applying the same Plaintiffs' allegations to the same claims this

15   Settlement would resolve. Dkt. # 53 at 6-7. Plaintiffs allege injuries that are coextensive with those

16   of absent Class Members—two of the Plaintiffs were trainees, and all three were agents paid on a

17   commission-only basis during the class period. *See* Dkt. # 30, ¶¶ 21-28. Further, Plaintiffs' claims

18   are based on alleged conduct by AIL that is not unique to them but applies to all other Class

19   Members under the same legal theories as Class Members' claims. *See Parsons*, 754 F.3d at 685.

20   All three Plaintiffs are thus members of, and allege the same injuries as, the putative Class.

21          **d.   Plaintiffs and their counsel will continue to fairly and adequately**

22              **protect the interests of the Settlement Class**

23          As discussed above—and as this Court previously determined—there has been adequate

24   representation of the putative Class throughout this litigation. There are no intra-class conflicts; to

25   the contrary, Plaintiffs and Class Members share the same interest in seeking compensation and

26   penalties from AIL for unpaid wages and expenses, among other things. Plaintiffs have

27   demonstrated their commitment to furthering the Class's interests, and Plaintiffs' Counsel have

28   multiple decades of combined experience with a history of successfully litigating complex

employment class actions.  Dkt. # 42-1 ¶¶ 24-30 (Declaration of Steven M. Tindall supporting final approval); Dkt. # 42-9 ¶¶ 3-6 (Declaration of Michael A. Gould supporting final approval).

### 2.    The Settlement Class meets the requirements of Rule 23(b)(3)

As this Court previously held, in addition to meeting Rule 23(a)'s criteria, the Settlement Class also satisfies Rule 23(b)(3) because common questions predominate over any questions affecting only individual members.  Dkt. # 53 at 8.  The core questions continue to be whether AIL's alleged practices of not paying trainees and paying insurance sales agents only commissions are lawful, and whether, as a result, Class Members are entitled to various forms of pay and civil penalties.  These questions at the center of this case will drive resolution of the litigation for the Class.

Additionally, resolving all Class Members' claims through a single class action (and particularly in a class-wide settlement providing relief to all Class Members) continues to be superior to a series of individual arbitrations or lawsuits.  *See* Fed. R. Civ. P. 23(b)(3); Dkt. # 39 at 23.  Moreover, because class certification here arises only in the settlement context, the Court need not evaluate trial manageability.  *See Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997). Thus, certifying this Settlement Class, as the Court did previously, is appropriate.

### 3.    The proposed Class Notice provides the best method of notice practicable

As with the previous version of the settlement, the parties agreed to provide individual notice to Class Members by both U.S. mail and email.  The Settlement Administrator will perform skip tracing where any mail is returned.  In addition, the parties have agreed to publish a settlement website where Class Members may update their own contact information.  SA ¶¶ III(M)(3-5).

Plaintiffs respectfully request that the Court approve this notice plan as the best practicable under the circumstances.  *See* Dkt. # 53 at 8-9 (approving of notice dissemination under the prior iteration of the settlement).  As with the previous notice, the revised Notice complies with Rule 23(c)(2)(B), in that it "clearly and concisely state[s] in plain, easily understood language" the nature of the action; the class definition; the class claims, issues, or defenses; that the class member may appear through counsel; that the Court will exclude from the Class any member who requests exclusion; the time and manner for requesting exclusion; and the binding effect of a class judgment

on Class Members.  Notice.  The Notice also acknowledges the previous settlement and explains how the revised Settlement, the Class Member payments, and the calculation thereof differ from the previous versions of these.  *Id.*

### C.    The Court should set a schedule for final approval

Once the Court directs notice of the settlement to the Class, the next steps are to schedule a final approval hearing, allow time for the Notice to be sent to the class and an opportunity for Class Members to submit objections and opt-out requests.

The parties propose the following schedule:

| | |
|---|---|
| Settlement Administrator to disseminate class notice | 14 days after entry of preliminary approval order |
| Plaintiffs to file a motion for award of attorneys' fees and incentive awards | 28 days after entry of preliminary approval order |
| Deadline for class members to opt out of or object to the Proposed Settlement | 60 days after mailing of Notice |
| Plaintiffs to file motion for final settlement approval | 35 days before Final Approval Hearing |
| Plaintiffs to file reply in support of attorneys' fees and incentive awards, and in support of final settlement approval | 14 days before Final Approval Hearing |
| Final Approval Hearing | 125 days after entry of preliminary approval order (or date thereafter convenient to the Court) |

## V.    <u>CONCLUSION</u>

For the foregoing reasons, Plaintiffs respectfully request that the Court enter the accompanying Proposed Order directing notice of the revised proposed settlement to the Class, certifying the Settlement Class, appointing Class Counsel, and setting a hearing for the purpose of deciding whether to grant final approval of the revised proposed settlement.

Dated:  August 6, 2020

Respectfully submitted,

**GIBBS LAW GROUP LLP**

By: */s/ Steven M. Tindall*

Steven M. Tindall
Amanda M. Karl
505 14th Street, Suite 1110
Oakland, CA 94612
Tel: (510) 350-9700
Fax: (510) 350-9701
smt@classlawgroup.com
amk@classlawgroup.com


Michael A. Gould
Aarin A. Zeif
**GOULD & ASSOCIATES**
17822 E. 17th Street, Suite 106
Tustin, California 92780
Telephone:  (714) 669-2850
Facsimile:  (714) 544-0800
Michael@wageandhourlaw.com
Aarin@wageandhourlaw.com

*Attorneys for Plaintiffs and the Proposed Class*

NOTICE OF MOTION AND MOTION FOR PRELIMINARY SETTLEMENT APPROVAL
CASE NO. 3:18-CV-06364-TSH