Michael A. Gould (SBN 151851)
Aarin A. Zeif (SBN 247088)
GOULD & ASSOCIATES
17822 E. 17th Street, Suite 106
Tustin, California 92780
Telephone: (714) 669-2850
Facsimile: (714) 544-0800
Michael@wageandhourlaw.com
Aarin@wageandhourlaw.com

*Attorneys for Plaintiff David Joh and the Proposed Class*

Steven M. Tindall (SBN 187862)
Amanda M. Karl (SBN 301088)
GIBBS LAW GROUP LLP
505 14th Street, Suite 1110
Oakland, CA 94612
Telephone: (510) 350-9700
Facsimile: (510) 350-9701
smt@classlawgroup.com
amk@classlawgroup.com

*Attorneys for Plaintiffs David Hamilton and Bridget Smith and the Proposed Class*

# UNITED STATES DISTRICT COURT FOR THE

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DAVID JOH, *et al.*,<br><br>Plaintiffs,<br><br>vs.<br><br>AMERICAN INCOME LIFE INSURANCE COMPANY, *et al.*,<br><br>Defendants. | Case No. 3:18-CV-06364-TSH<br><br>**PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF REVISED CLASS ACTION SETTLEMENT AND REQUEST FOR ATTORNEYS' FEES, COSTS, AND SERVICE AWARDS**<br><br>Date: January 7, 2021<br>Time: 10:00 A.M.<br>Judge: Hon. Thomas S. Hixson |

## **TABLE OF CONTENTS**

I.  INTRODUCTION ................................................................................................................ 1

II.  BACKGROUND ................................................................................................................ 2

III.  THE SETTLEMENT MERITS FINAL APPROVAL .................................................... 8

  A.  Plaintiffs and Plaintiffs' Counsel have Adequately Represented the Class ............................ 8

  B.  Plaintiffs' Counsel Negotiated the Settlement at Arm's Length ................................ 9

  C.  The Relief Provided to the Class is Substantial ................................................ 9

  D.  The Settlement Treats all Class Members Equitably ................................................ 10

  E.  To Date, Class Members' Response to the Settlement has been Positive .............................. 11

IV.  PLAINTIFFS' SEEK REASONABLE ATTORNEYS' FEES AND COSTS ...................... 12

  A.  Legal Standard ................................................................................................ 12

  B.  The Fee Request is Reasonable Under the Percentage-of-the-Fund Method ......................... 13

  C.  Plaintiffs' Fee Request is also Reasonable under the Lodestar Method ................................ 14

  D.  Plaintiffs' Counsel's Cost Request is Reasonable and Proper .................................... 17

  E.  Plaintiffs' Requested Service Payment is Appropriate ............................................ 18

V.  CONCLUSION ................................................................................................................ 19

1

## <u>TABLE OF AUTHORITIES</u>

2

Page(s)

3

Cases

4

*Bellinghausen v. Tractor Supply Co.*,
  306 F.R.D. 245 (N.D. Cal. 2015) ................................................................. 25

5

*Ching v. Siemens Indus., Inc.*,
  2014 WL 2926210 (N.D. Cal. June 27, 2014) ............................................. 23

6

*City of Burlington v. Dague*,
  505 U.S. 557 (1992) ..................................................................................... 18

7

*Craft v. Cnty. of San Bernardino*,
  624 F. Supp. 2d 1113 (C.D. Cal. 2008) ....................................................... 21

8

*Deaver v. Compass Bank*,
  2015 WL 8526982 (N.D. Cal. Dec. 11, 2015) ............................................. 14

9

*Diesel' Mktg., Sales Practices & Prod. Liab. Litig.*,
  895 F.3d 597 (9th Cir. 2018) ....................................................................... 10

10

*Garner v. State Farm Mutual Automotive Insurance Co.*,
  2010 WL 1687832 (N.D. Cal. Apr. 22, 2010) ........................................ 25, 26

11

*Glass v. UBS Fin. Servs., Inc.*,
  2007 WL 221862 (N.D. Cal. Jan. 26, 2007) ................................................ 25

12

*Hopkins v. Stryker Sales Corp.*,
  2013 WL 496358 (N.D. Cal. Feb. 6, 2013) ................................... 21, 22, 23

13

*In re Activision Sec. Litig.*,
  723 F. Supp. 1373 (N.D. Cal. 1989) ........................................... 6, 8, 9, 17

14

*In re Bluetooth Headset Prods. Liab. Litig.*,
  654 F.3d 935 (9th Cir. 2011) ................................................... 15, 16, 18

15

*In re Immune Response Sec. Litig.*,
  497 F. Supp. 2d 1166 (S.D. Cal. 2007) ........................................................ 24

16

*In re Media Vision Tech. Sec. Litig.*,
  913 F. Supp. 1362 (N.D. Cal. 1996) ............................................................ 24

17

*In re Pac. Enters. Sec. Litig.*,
  47 F.3d 373 (9th Cir. 1995) ................................................................... 6, 17

18

*In re Wash. Pub. Power Supply Sys. Sec. Litig.*,
  19 F.3d 1291 (9th Cir. 1994) ................................................................ 15, 16

19

*Kerr v. Screen Extras Guild, Inc.*,
  526 F.2d 67 (9th Cir. 1975) ......................................................................... 18

20

*Nen Thio v. Gengi LLC*,
  14 F. Supp. 3d 1324 (N.D. Cal. 2014) ......................................................... 13

21

*O'Connor v. Uber Techs., Inc.*,
  201 F. Supp. 3d 1110 (N.D. Cal. 2016) .................................................. 13, 14

22

*Paul, Johnson, Alston & Hunt v. Graulty*,
  886 F.2d 268 (9th Cir. 1989) .................................................................. 6, 16

23

*Pineda v. Bank of Am., N.A.*,
  50 Cal. 4th 1389 (2010) ................................................................................. 5

24

25

26

27

28

ii

*Ross v. U.S. Bank Nat. Ass'n*,
    2010 WL 3833922 (N.D. Cal. Sept. 29, 2010) ........................................................ 24

*Ruch v. AM Retail Grp.*,
    2016 WL 5462451 (N.D. Cal. Sept. 28, 2016) ........................................................ 23

*Schwarz v. Sec'y of Health & Human Servs.*,
    73 F.3d 895 (9th Cir. 1995) .................................................................................... 19

*Singh v. Roadrunner Intermodal Servs., LLC*,
    2019 WL 316814 (E.D. Cal. Jan. 24, 2019) ............................................................ 14

*Six Mexican Workers v. Az. Citrus Growers*,
    904 F.2d 1301 (9th Cir. 1990) ............................................................................. 6, 16

*Staton v. Boeing Co.*,
    327 F.3d 938 (9th Cir. 2003) .............................................................................. 16, 18

*Steiner v. Am. Broad. Co., Inc.*,
    248 Fed. Appx. 780 (9th Cir. Aug. 29, 2007) ......................................................... 21

*United Steelworkers of Am. v. Phelps Dodge Corp.*,
    896 F.2d 403 (9th Cir. 1990) .................................................................................. 20

*Van Kempen v. Matheson Tri-Gas, Inc.*,
    2017 WL 3670787 (N.D. Cal. Aug. 25, 2017) ......................................................... 14

*Van Vranken v. Atl. Richfield Co.*,
    901 F. Supp. 294 (N.D. Cal. 1995) ...................................................................... 21, 23

*Vizcaino v. Microsoft Corp.*,
    290 F.3d 1043 (9th Cir. 2002) ................................................................................ 21

*Wren v. RGIS Inventory Specialists*,
    2011 WL 1230826 (N.D. Cal. Apr. 1, 2011) ........................................................... 17

Statutes

28 U.S.C. § 1715 ............................................................................................................. 6

California Labor Code § 203 ................................................................................... 2, 3, 4

Rules

Federal Rule of Civil Procedure 23 ............................................................... *passim*

NOTICE OF MOTION AND MOTION FOR FINAL SETTLEMENT APPROVAL
CASE NO. 3:18-CV-06364-TSH

## NOTICE OF MOTION AND MOTION

**TO ALL PARTIES AND THEIR COUNSEL OF RECORD:**  PLEASE TAKE NOTICE that on January 7, 2021, at 10:00 a.m., or as soon thereafter as the matter may be heard before the Honorable Thomas S. Hixson in the United States District Court for the Northern District of California, Plaintiffs David Joh, David Hamilton, and Bridget Smith will move, and hereby do move, for an order (1) granting final approval of the revised class action settlement they reached in this case with Defendant American Income Life Insurance Company and (2) granting Plaintiffs' request for an award of attorneys' fees, litigation costs, and class representative service awards.

Plaintiffs' motion is based on this Notice of Motion; the Memorandum of Points and Authorities (immediately below); the Declarations of Steven M. Tindall and Michael Gould; the Declaration of Settlement Administrator KCC Class Action Services, LLC; the [Proposed] Order Granting Motion for Final Approval of Class Action Settlement; and all other papers filed and proceedings had in this action.

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.      INTRODUCTION

On August 21, 2020, this Court granted preliminary approval to the $5.75 million class action settlement Plaintiffs reached with Defendant American Income Life Insurance Company ("AIL").  This is the second version of this Settlement presented to the Court for final approval.  The main change between the earlier version and this one is that the parties adjusted the distribution method to address the Court's concerns regarding the allocation of settlement proceeds to different groups of Class Members.  Specifically, the Court concluded that the previous proposed distribution to trainees who never worked as insurance sales agents did not sufficiently account for the value of potential waiting time penalties attributed to trainees in Plaintiffs' estimated damages.  In response to the Court's concerns, the parties worked diligently to adjust the distribution method, which this version of the Settlement would implement.

On August 21, 2020, the Court granted preliminary approval to the revised Settlement, including its improved distribution method.  Pursuant to the Court's Order, KCC mailed notice to the

7,014 Class Members,[1] which informed them of the Settlement and of their options to participate in, opt out of, or object to the Settlement. Although Class Members need not respond to the Settlement until November 3, 2020, their responses so far have been uniformly positive. As of this brief's filing date, zero Class Members have opted out of the Settlement Class, and zero Class Members have filed objections. Plaintiffs will provide an updated report to the Court on the Class Member response by December 10, 2020, four weeks before the Fairness Hearing and after the response deadline passes.

Because the $5.75 million settlement is a fair, adequate, and reasonable result for the Class— and the class distribution is equitable across different groups of Class Members—Plaintiffs respectfully request that the Court grant final approval of the revised Settlement, and grant Plaintiffs' requests for attorneys' fees, costs, and Class Representative service awards.

## II.    **BACKGROUND**

This Settlement is on behalf of a putative class of California insurance sales agents and agent trainees who were affiliated with AIL. Plaintiffs' factual and legal allegations are well detailed in their prior Motion for Final Settlement Approval (Dkt # 42 at 2-3), and the relevant procedural history, Settlement re-negotiation process, and revised Settlement description can be found in Plaintiffs' most recent Motion for Preliminary Approval (Dkt. # 72 ("PA Mot.") at 2-5). Plaintiffs summarize the settlement approval history to date below.

Plaintiffs previously submitted for the Court's approval the earlier version of the $5.75 million settlement. The Court granted preliminary approval to that settlement (Dkt. # 41), but at the final approval stage, the Court raised concerns about the distribution of funds to class members (Dkt. # 53), and ultimately denied final approval following supplemental briefing (Dkt. # 65). The Court expressed concern primarily with whether the prior settlement's workweek-based calculation resulted in a distribution that was equitable to all class members. Specifically, a significant proportion of Plaintiffs' estimated damages stemmed from potential waiting time penalties under California Labor Code § 203, which are calculated on a *per-person* basis, while the class member

---

[1] KCC obtained records from AIL, which KCC deduplicated. Declaration of Susanna Webb ("KCC Dec.") ¶ 5.

NOTICE OF MOTION AND MOTION FOR FINAL SETTLEMENT APPROVAL
CASE NO. 3:18-CV-06364-TSH

distribution was calculated exclusively on a *per-workweek* basis. As a result, the Court expressed concern that class members who were trainees and never worked as agents would not receive an amount proportional to Plaintiffs' estimated value of their claims. Dkt. # 65 at 2-6.

As Plaintiffs described in their recent preliminary approval motion (PA Mot. at 3-5), the parties renegotiated the distribution method. This revised Settlement creates two settlement sub-funds (or "buckets") that correspond to the proportions of Plaintiffs' estimated damages. One bucket is the Terminated Trainees and Agents Fund, which will be distributed on a per-person basis to all trainees and agents who were terminated within § 203's statute of limitations period and who therefore may be entitled to penalties under § 203. That sub-fund constitutes approximately 38.897% of the Net Settlement Fund—the same percentage of Plaintiffs' estimated damages attributable to § 203 waiting-time penalties. *Id.* at 4; Dkt. # 72-1 (Declaration of Steven M. Tindall in Support of Plaintiffs' Motion for Preliminary Approval of Revised Class Action Settlement, or "Tindall PA Dec.") ¶¶ 7-15. The remainder of the Net Settlement Fund will be placed in the All Trainees and Agents Fund and will be distributed to all Class Members using a workweek-based formula. PA Mot. at 5; Tindall PA Dec. ¶ 16; *see generally* Dkt. # 39 at 5-6 (describing the workweek-based formula).

The Court preliminarily approved this Settlement on August 21, 2020, concluding that it would likely approve the proposed Settlement as fair, reasonable, and adequate. Dkt. # 73 at 1. It also concluded on a preliminary basis that (1) Plaintiffs and Class Counsel adequately represented the class, (2) the Settlement was negotiated at arm's length, and (3) the Settlement's relief appears to be adequate in light of the costs and risks of further litigation, the proposed distribution to Class Members, and the proposed request for Plaintiffs' attorneys' fees, costs, and class representative service payments. *Id.* at 1-2. It also determined that it would likely certify the Settlement Class (*id.* at 2-3), appointed KCC, LLC, to be the Settlement Administrator (*id.* at 3), and ordered KCC to provide notice to Class Members. *Id.* Finally—and notably—the Court determined that "the parties have addressed the distribution issue that the Court raised with regard to the earlier version of the settlement," and the proposed Settlement "treats Class Members equitably relative to one another." *Id.* at 1, 2.

The proposed Settlement, if approved, would dispose of all claims in this action, as well as two other related cases: *Hamilton v. American Income Life Insurance Co.*, Case No. 3:18-cv-07535-KAW (N.D. Cal.) (the claims, plaintiff, and counsel in *Hamilton* are incorporated into the operative complaint here), and *Golz v. American Income Life Insurance Co.*, 2:18-cv-09879 (C.D. Cal.).[2]

## TERMS OF THE PROPOSED SETTLEMENT

**Settlement Class.**  The Settlement now before the Court defines the Settlement Class as all individuals who trained to become and/or worked as sales agents in California for AIL during the four years prior to the filing of the original Complaint in *Joh* (*i.e.*, since September 12, 2014) and whose training and/or work began before August 16, 2019—that is, the date of preliminary approval of the earlier version of this Settlement.  The class period, therefore, is September 12, 2014 through August 16, 2019.  Tindall PA Dec. Ex. A (Settlement Agreement, or "SA") ¶ II(D), (G).[3]

**Benefits to the Settlement Class.**  All Settlement Class Members are eligible to receive cash awards from the Net Settlement Fund, calculated as described below, without having to file a claim form.  SA, ¶ II(O); Tindall PA Dec. ¶ 18.  In other words, settlement checks will be sent to all Class Members unless they affirmatively opt out of the Settlement.

**Calculation of Benefits.**  Each Settlement Class Member's share of the Net Settlement Fund will be calculated based on two factors:  (a) whether and when they stopped working for AIL, and (b) the number of workweeks allocated to them.

First, each Class Member whose affiliation with AIL terminated between September 12, 2015 and August 16, 2019[4] will receive an equal share of the Terminated Trainees and Agents Fund. SA ¶ III(F).  Second, each Class Member—regardless of termination status—will be entitled to a share of the All Trainees and Agents Fund based on the weeks they trained and worked as trainees

---

[2] Counsel in *Golz* has recently filed a new related case, *Bell, et al. v. American Income Life Insurance Company, et al.*, 2:20-cv-07046 (C.D. Cal.), though it has not yet served the complaint on AIL.  *See* Dkt. #74 (Notice of Pendency of Other Action).

[3] The Court certified a nearly identical settlement class in connection with the earlier version of the Settlement (Dkt. # 53 at 8), and preliminarily certified this Class in connection with the current Settlement (Dkt. # 73 ¶¶ 7-9).  *See generally* PA Mot. at 12-15 (Plaintiffs' most recent class certification argument).

[4] This timeframe reflects the three-year statute of limitations period for Labor Code § 203 waiting time penalties.  *Pineda v. Bank of Am., N.A.*, 50 Cal. 4th 1389, 1398 (2010).

and agents during the Class Period.  The distribution method for this fund—including the weighting of training weeks as worth two weeks each—remains unchanged from the previous iteration of the settlement's workweek-based distribution method.  *See id.*; Dkt. # 39 at 5-6 (description from Plaintiffs' prior preliminary approval brief); Tindall PA Dec. ¶ 16.  Before the Net Settlement Fund is distributed, each Class Member will have the opportunity to challenge both their terminated status and the number of workweeks allocated to them.  SA, Ex. B ("Information Form").

**PAGA Penalties.**  Plaintiffs' operative complaint alleges claims for penalties under PAGA. Dkt. # 30 ¶¶ 90-98.  As in the prior settlement, the parties agreed to allocate 1.75% of the Settlement Amount, or $100,625, for PAGA penalties, subject to Court approval.  Pursuant to PAGA, 75% of this amount (or $75,469) shall be paid to the LWDA, and 25% (or $25,156) shall be distributed to the Settlement Class Members as part of the Net Settlement Fund.  SA ¶ III(K).  The parties submitted the Proposed Settlement to the LWDA concurrently with the motion for preliminary approval.[5]  Declaration of Steven M. Tindall ("Tindall Dec.") ¶ 9.

**Service Awards.**  Plaintiffs move for Class Representative service awards in the amount of $7,500 each for Plaintiffs Joh, Hamilton, and Smith for the time and effort they spent in bringing these cases and for their willingness to come forward to litigate against AIL.  SA ¶ III(I).  Their work on this case is described in previously filed declarations.  *See* Dkt. ## 42-7, 42-8, 42-1 ¶ 22, 42-9 ¶¶ 15-16.  Should the Court award less than $7,500 per Plaintiff in service awards, the difference will be included in the amount to be distributed to the Settlement Class Members.  SA ¶ III(I).

**Attorneys' Fees.**  Plaintiffs respectfully request attorneys' fees in the amount of the Ninth Circuit's benchmark[6] of 25% of the value of the Settlement Fund (or a total of $1,437,500), plus litigation costs of $20,996.99.  Tindall Dec. ¶ 33.  These are the same amounts of fees and costs that

---

[5] The parties also submitted the previous settlement to the LWDA, which did not notify the parties of any objection to either the $5,750,000 settlement amount or the settlement agreement's PAGA penalty allocations.  Tindall PA Decl. ¶ 19.

[6] *See, e.g.*, *Paul, Johnson, Alston & Hunt v. Graulty,* 886 F.2d 268, 273 (9th Cir. 1989) (establishing 25% as the "benchmark" award in common fund cases, subject to adjustments); *Six Mexican Workers v. Az. Citrus Growers,* 904 F.2d 1301, 1311 (9th Cir. 1990) (awarding 25% benchmark); *see also In re Pac. Enters. Sec. Litig.*, 47 F.3d 373, 379 (9th Cir. 1995) (affirming 33% fee award); *In re Activision Sec. Litig.*, 723 F. Supp. 1373, 1379 (N.D. Cal. 1989) (32.8% award).

Plaintiffs' Counsel requested in the prior iteration of the settlement, even though they have continued to spend time and resources to resolve this case on behalf of the Class.  Dkt # 42 at 17-18 (prior costs and fees request); Tindall Dec. ¶ 33.  For the reasons stated below in Section IV, Plaintiffs believe the requested fee is appropriate under both the percentage-of-the-fund and the lodestar-multiplier methods of determining reasonable fees used in the Ninth Circuit.

**Notice Plan.**  On August 23, 2019, AIL provided the Settlement Administrator the names, last known mailing and email addresses, the number of workweeks during the Class Period, and the hire and termination dates (if any) for all Settlement Class Members.  KCC Dec. ¶ 5; *see* SA ¶ III(M).  KCC processed the names and addresses through the National Change of Address Database ("NCOA") to update any addresses on file with the United States Postal Service.  KCC Dec. ¶ 5. KCC mailed notice to all Class Members via U.S. Mail and sent the notice via email for all Class Members for whom AIL had email addresses.  *Id.* ¶¶ 6-8.  KCC has established a website devoted to the Settlement, which includes the Class Notice and other case-related documents*.  Id.* ¶ 9.  Class Members can update their contact information directly on the website.  *Id.* ¶ 10.

**CAFA Notice.**  AIL is responsible for compliance with Class Action Fairness Act ("CAFA") notice requirements.  SA ¶ III(M)(6).  CAFA requires that notice of a settlement be given to the appropriate government officials identified in the statute.  *See* 28 U.S.C. § 1715.  AIL contracted with KCC to provide the appropriate CAFA notice, which KCC has provided.  KCC Dec. ¶¶ 3-4.

**Dispute, Objection, and Opt-Out Procedures.**  As with the previous settlement, Class Members will have 60 days from the mailing date of the Notice to (1) dispute the workweeks and termination status attributed to them, (2) opt out of the Settlement Class, or (3) object to the Settlement.  SA ¶¶ III(F), (N), (O).  Because Notice was mailed on September 4, 2020, Class Members will have until November 3, 2020 to respond.  As of the filing of this brief, zero Class Members have objected to the Settlement, zero have opted out, and zero have submitted challenges to the number of workweeks or termination status attributable to them.  KCC Dec. ¶¶ 11-13.  After the deadline for opting out and objecting, Plaintiffs will report to the Court on December 10, 2020 the number of opt outs, objections, and workweek or termination status disputes Class Members have filed.

If a Class Member wishes to dispute the number of his or her workweeks or terminated status, the Class Member may submit a written challenge and documentary evidence to the Settlement Administrator. *See* Information Form. Plaintiffs' Counsel and Defense Counsel will work with the Settlement Administrator to evaluate whether the presumptive workweeks should be exceeded or if the Class Member's terminated status should be amended. In the event of a disagreement, the Settlement Administrator will make a final decision based on the information provided by the Class Member and Counsel, which will not be appealable. SA ¶ III(F).

**Release of Claims.** If the Settlement is finally approved, Plaintiffs and all Class Members will release claims that were brought by Plaintiffs or that reasonably arise out of the facts alleged in the operative complaint. As with the previous version of this settlement, the parties intend the release to encompass all claims asserted in the Second Amended Complaint in this case (Dkt. # 30) (which itself encompasses all claims in Plaintiffs Hamilton and Smith's case before Judge Westmore), and in *Golz*. SA ¶ III(R)(1); Dkt. # 53 at 15 ("Thus, the *Hamilton* complaint encompasses the same California Labor Code violations vis-a-vis trainees that were asserted in *Golz*.").[7] By releasing these claims, the Settlement would also release some liability for the claims in *Bell*. *See supra* n.2.

**Funding of Settlement and Payment.** To resolve this matter, Defendant has agreed to pay $5,750,000—which includes a PAGA payment to the LWDA and any payments approved by the Court for attorneys' fees, costs, class representative service awards, and administration costs. SA ¶ II(Y). AIL transferred $1,000,000 to the Escrow Fund following the Court's entry of preliminary approval in the prior settlement and did not seek a return of those funds after the Court denied final approval of the previous Settlement. *Id.* ¶ III(C); KCC Dec. ¶ 15. AIL has further agreed to transfer the remaining $4,750,000 to the Escrow Fund (as well as any additional costs related to the need to re-send the class notice as part of this Settlement) within seven business days of the Effective Date. *Id.* The other pertinent details regarding funding the Settlement and issuing payments to Class Members remain unchanged since the prior iteration of the settlement, including mailing checks to

---

[7] As the Court previously noted, the fourth and final related case, *Putros v. AIL*, Case No. 30-2019-01044772-CU-OE-CXC, was dismissed with prejudice by the Orange County Superior Court. Dkt. # 53 at 5 n.1.

NOTICE OF MOTION AND MOTION FOR FINAL SETTLEMENT APPROVAL
CASE NO. 3:18-CV-06364-TSH

Class Members and a *cy pres* recipient, subject to the Court's approval.  Tindall PA Dec. ¶ 18; Dkt. ## 39 at 8-9 (prior briefing summarizing funding and payment), 39-8 (declaration from Legal Aid at Work's President).

**Settlement Administration.**  The Court appointed KCC as the Settlement Administrator. Dkt. # 73 at 3.  KCC is an experienced class action administrator and was chosen by the parties after comparing bids from five administrators. Dkt. ## 39-1 ¶ 20, 39-7 (KCC's C.V.).  To administer this Settlement, KCC estimates its fees will be $94,127.00, including costs from disseminating the prior iteration of the settlement's notice and maintaining the website.  KCC Dec ¶ 14.  Fees and expenses for the Settlement Administrator will come out of the Settlement Fund, up to $55,000. SA ¶ II(O). As noted above, Defendant has agreed to pay KCC any additional settlement administration costs occasioned by sending the revised Notice separate from, and in addition to, the total Settlement Fund in this case.  *Id.*  The result is that the value of the Settlement to Class Members has not been reduced by the need to provide a second, revised settlement notice.

## III.     THE SETTLEMENT MERITS FINAL APPROVAL

Federal Rule of Civil Procedure 23 provides a checklist of factors for courts to consider at final approval when assessing whether a proposed settlement is fair, reasonable, and adequate.  *See* Fed. R. Civ. P. 23(e)(2).  Plaintiffs analyze each of the Rule 23(e)(2) factors below, bearing in mind the Ninth Circuit's admonition that the key "underlying question remains this:  Is the settlement fair?"  *In re Volkswagen 'Clean Diesel' Mktg., Sales Practices & Prod. Liab. Litig.,* 895 F.3d 597, 611 (9th Cir. 2018).  These factors each weigh in favor of approval here.

### A.     Plaintiffs and Plaintiffs' Counsel have Adequately Represented the Class

Under Rule 23(e)(2)(A), courts consider whether the class representative and class counsel have adequately represented the class.  The Court previously determined that Plaintiffs and Class Counsel have done so not only when it granted preliminary approval of the prior iteration of this Settlement (Dkt. # 41 ¶ 5), but also in its first order on final approval of that settlement (Dkt. # 53 at 11-12), and most recently in its order granting preliminary approval of the current Settlement (Dkt. # 73 at 1-2).  Plaintiffs and Class Counsel have continued to zealously represent the class while

renegotiating the distribution mechanisms of this Settlement with AIL and revising the class notice accordingly.  Tindall PA Dec. ¶ 17.

### B.    Plaintiffs' Counsel Negotiated the Settlement at Arm's Length

Under Rule 23(e)(2)'s second factor, the Settlement was negotiated at arm's length.  Again, the Court already so determined—based on the parties' full-day mediation with an experienced class action mediator, confirmatory discovery, counsel's evaluation of the strengths and risks of Plaintiffs' claims and AIL's defenses, and the parties' renegotiation of the Settlement's distribution mechanism.  Dkt. ## 41 ¶ 5, 53 at 12-13, 73 at 2; Tindall PA Dec. ¶¶ 5-17.

Also, even though both parties have expended significant additional time renegotiating the Settlement's distribution mechanism—and even though it will cost more than originally budgeted to re-notice the Class—the parties agreed that AIL would pay for any additional settlement administration costs separate from the Settlement Fund, and that Plaintiffs' Counsel will request no additional fees or costs beyond what they had previously requested.  Tindall PA Dec. ¶ 18.

### C.    The Relief Provided to the Class is Substantial

The third factor is whether the relief provided for the class is adequate under Rule 23(e)(2)(C) in light of the "costs, risks, and delay" of further litigation, the method for distributing relief to the class, the terms of any proposed fee award, and any other agreements made in connection with the proposed settlement. Fed. R. Civ. P. (e)(2)(C) & (i) – (iv).  The Court already ruled that the $5.75 million relief this Settlement provides is adequate in light of the risks and costs of continued litigation, and that determination remains true today.  Dkt. ## 41 ¶ 5, 53 at 13-14, 73 ¶ 5.  Plaintiffs estimate that the $5.75 million Settlement amounts to approximately 16.5% of Plaintiffs' total estimated damage, which is well within the range the Court previously noted.  Dkt. # 53 at 13-14 (collecting cases and noting risks); Tindall PA Dec. ¶ 14.

The Court has also already determined, in both its preliminary approval orders, that the Settlement is adequate in light of the methods for claims processing and Class Member distribution, and the proposed attorneys' fee award.  *See* Fed. R. Civ. P. (e)(2)(C)(ii)-(iii); Dkt. ## 41 ¶ 5, 73 ¶ 5.  Plaintiffs discuss the attorneys' fee award in more detail in Section IV, below.  Finally, there were no additional agreements made in connection with the settlement.  *See* Fed. R. Civ. P.

23(e)(2)(C)(iv); Tindall Dec. ¶ 9.  The revised Settlement Agreement before the Court is the only operative agreement between Plaintiffs and AIL.  Tindall Dec. ¶ 9.

### D.    The Settlement Treats all Class Members Equitably

The final Rule 23(e)(2) factor is whether the proposed settlement "treats class members equitably relative to each other." Fed. R. Civ. P. 23(e)(2)(D).  On this point, the Court previously expressed concern that the prior workweek-only distribution method was unfair to trainees who never became agents.  Specifically, the alleged waiting time penalties of trainee-only Class Members—which do not accrue by *workweek* but instead on a *per-person* basis—accounted for a larger percentage of Plaintiffs' estimated damages than the trainee-only Class Members would receive under the previous workweek-only distribution method. Dkt. # 53 at 15-18.

As Plaintiffs informed the Court in their motion for preliminary approval of the revised Settlement, the parties renegotiated the Settlement's distribution method specifically to address the Court's concerns. *See* PA Mot. at 5-6, 10-11; Tindall PA Dec. ¶¶ 15, 18.  The Court reviewed this new distribution structure and preliminarily found it to "treat[] Class Members equitably relative to one another." Dkt. # 73 ¶ 5.

To summarize, the revised Settlement's distribution structure ensures that trainee-only Class Members who may be entitled to waiting time penalties receive a settlement amount that reflects their contribution to Plaintiffs' estimated damages.  To this end, the Net Settlement Amount will be split into two sub-funds:  (1) the All Trainees and Agents Fund, which will be distributed to all Class Members on a workweek basis, as outlined in the prior iteration of the settlement, and (2) the Terminated Trainees and Agents Fund, which will be divided evenly among all Class Members who would be potentially entitled to § 203 penalties—that is, agents and trainees who were terminated at some point during the relevant period.  SA ¶ III(F).  Because waiting time penalties account for approximately 38.897% of Plaintiffs' total estimated damages, the Terminated Trainees and Agents Fund will reflect this percentage and contain approximately 38.897% of the Net Settlement Fund. PA Mot. at 4-5; Tindall PA Dec. ¶¶ 7-15.  The remainder of the Net Settlement Amount (approximately 61.103%) will be placed in the All Trainees and Agents Fund to be distributed to all Class Members on a workweek basis.  Tindall PA Dec. ¶ 16; SA ¶ III(F).

Under this proposed distribution, individuals who may have qualified for waiting time penalties will receive approximately $313 each in addition to their per-workweek entitlement. Tindall PA Dec. ¶ 15.  This reformulated distribution mechanism, which includes payments from two sub-funds, addresses the Court's concerns regarding the equitable treatment of trainee-only Class Members, who are potentially entitled to waiting time penalties, while also recognizing that Class Members affiliated with AIL for longer periods of time accrued greater potential damages as part of their other Labor Code claims.  *Id.* ¶¶ 15, 17; *see also Nen Thio v. Gengi LLC*, 14 F. Supp. 3d 1324, 1330-31 (N.D. Cal. 2014) (approving a "203 Fund" to be distributed evenly among all terminated employees, with additional funds to be distributed based on hours worked and days worked across the certified class regardless of termination status), *final approval granted*, 2014 WL 12644020 (Dec. 5, 2014).

### E.    To Date, Class Members' Response to the Settlement has been Positive

The response of the Class Members to the Settlement thus far has been positive.  Although Class Members have until November 3, 2020 to respond to the Settlement, so far, zero have submitted objections and zero have opted out.  KCC Dec. ¶¶ 11-13.  Plaintiffs will file a report to the Court regarding Class Member responses (and respond to any objections) by December 10, 2020—that is, twenty-eight days before the Final Approval hearing.  *See* Dkt. # 73 ¶ 19 (scheduling Final Approval hearing for January 7, 2021).

### F.  The Proposed PAGA Payment is Appropriate

In reviewing a class action settlement that also encompasses PAGA claims, courts "evaluate the adequacy of compensation to the class *as well as* the adequacy of the settlement in view of the purposes and policies of PAGA."  *O'Connor v. Uber Techs., Inc.*, 201 F. Supp. 3d 1110, 1134 (N.D. Cal. 2016) (emphasis in original).  The PAGA payment, which is equal to 1.75% of the total Settlement, remains unchanged since the prior iteration of the settlement, which the Court preliminarily approved.  Dkt. ## 41, 73; SA III(K); *see also* Dkt. # 39 at 19-20 (Plaintiffs' prior briefing on PAGA payment).  Seventy-five percent of the PAGA payment (or $75,469) will be distributed to the LWDA, as required by the Labor Code.  SA ¶ III(K).

1    This amount is reasonable and appropriate in light of the purposes and policies of PAGA.

2    Judges in this District have approved comparable PAGA payments in class action settlements.  *See*

3    *Deaver v. Compass Bank*, 2015 WL 8526982, at *1, *3 (N.D. Cal. Dec. 11, 2015) (approving $5,000

4    PAGA payment—1% of a $500,000 settlement fund); *Van Kempen v. Matheson Tri-Gas, Inc.*, 2017

5    WL 3670787, at *10 (N.D. Cal. Aug. 25, 2017) (approving $5,000 PAGA allocation—1.4% of a

6    $370,000 settlement fund); *see also Singh v. Roadrunner Intermodal Servs., LLC*, 2019 WL 316814,

7    at *6 (E.D. Cal. Jan. 24, 2019) (concluding that $100,000 PAGA penalty—1.1% of a $9.25 million

8    settlement fund—"[was] fair, reasonable, and adequate in light of the public policy goals of

9    PAGA").  Because Labor Code claims are at the heart of this case, a majority of the Settlement funds

10    will be allocated to Class Members to compensate them for these claims.  This is fully consistent

11    with PAGA's purposes, which include "encouraging compliance with Labor Code provisions" and

12    "further[ing] the state's policy to protect workers from substandard and unlawful conditions."

13    *O'Connor*, 201 F. Supp. 3d at 1132-33 (quoting brief submitted by the LWDA).

14    **IV.    <u>PLAINTIFFS' SEEK REASONABLE ATTORNEYS' FEES AND COSTS</u>**

15    Plaintiffs respectfully request an award of attorneys' fees amounting to 25% of the

16    Settlement Fund, or $1,437,500, and an award of $20,996.99 in litigation costs.  These requested

17    amounts are identical to those made in the prior iteration of the settlement.  Although Plaintiffs'

18    Counsel have devoted significant additional time and resources to renegotiating the Settlement,

19    revising the class notice, and presenting the Settlement to the Court anew, Plaintiffs have not

20    increased their fees and costs request.

21    The amount requested is appropriate and reasonable under the Ninth Circuit's percentage-of-

22    the-fund benchmark, which the lodestar crosscheck confirms.

23    **A.    Legal Standard**

24    The Ninth Circuit uses two methods for determining attorneys' fees in common fund class

25    action cases:  the percentage-of-the-fund method and the lodestar method.  *In re Bluetooth Headset*

26    *Prods. Liab. Litig.,* 654 F.3d 935, 942 (9th Cir. 2011).  Under the percentage method, a court seeks

27    to award a reasonable percentage of the settlement fund to plaintiff's counsel.  A court using the

28    lodestar method calculates the "lodestar" by multiplying the number of hours reasonably expended

by counsel's reasonable hourly rates, which, in turn, depend on the region and the lawyer's experience. *Id.* at 941. The "court may then enhance the lodestar with a 'multiplier,' if necessary, to arrive at a reasonable fee." *See In re Wash. Pub. Power Supply Sys. Sec. Litig.,* 19 F.3d 1291, 1294 n.2 (9th Cir. 1994) (citations omitted).

Regardless of whether a court "applies the lodestar or the percentage method," the Ninth Circuit requires "only that fee awards in common fund cases be reasonable under the circumstances." *Id.* (citations and emphasis omitted); *see also Staton v. Boeing Co.,* 327 F.3d 938, 963 (9th Cir. 2003) (underscoring courts' focus on reasonableness of fee amounts in class action settlements). Here, as described below, both methods of calculating fees demonstrate the reasonableness of Plaintiffs Counsel's fee request.

**B.     The Fee Request is Reasonable Under the Percentage-of-the-Fund Method**

The percentage-of-the-fund method permits courts to award attorneys a percentage of the settlement fund as attorneys' fees. *See In re Bluetooth*, 654 F.3d at 942. The Ninth Circuit has established a benchmark of 25% of the recovery under the settlement, which may be adjusted up or down depending on the circumstances of the case. *See Six Mexican Workers,* 904 F.2d at 1311 (awarding 25% benchmark); *see also Paul, Johnson,* 886 F.2d at 273 (establishing 25% of the fund as the "benchmark" award that should be given in common fund cases, subject to adjustments when appropriate). This benchmark, therefore, is not a fee ceiling—several courts in this Circuit have awarded more than 30% of a common fund to attorneys. *See In re Pac.,* 47 F.3d at 379 (affirming 33% award); *In re Activision,* 723 F. Supp. at 1375, 1379 (N.D. Cal. 1989) (32.8% award); *Wren v. RGIS Inventory Specialists,* 2011 WL 1230826, at *29 (N.D. Cal. Apr. 1, 2011) (awarding a fee of just under 42%).

Here, however, Plaintiffs' Counsel do not seek an upward adjustment, but seek the benchmark award of 25% of the total Settlement Fund. The benchmark is appropriate because the Settlement achieved by counsel in the case is an excellent result for Class Members. Plaintiffs' Counsel persuaded AIL to pay $5.75 million to settle the case despite many risks to recovery that Plaintiffs faced—including combatting a motion to compel arbitration; certifying a class that spanned multiple offices with potentially differing pay practices; and proving not only that trainees

were entitled to pay, but also that AIL improperly classified its agents as independent contractors, and that agents were not subject to an "outside salesperson" exemption. *See* Dkt. # 53 at 14 (Court identifying risks of continued litigation).

### C.    Plaintiffs' Fee Request is also Reasonable under the Lodestar Method

Under the lodestar method, the first step is to calculate the lodestar by "multiplying a reasonable hourly rate by the number of hours reasonably spent litigating the case." *Staton,* 327 F.3d at 965.  After examining the time and labor required, the court may apply a multiplier to the lodestar in light of certain factors, including:

> (1) the time and labor required; (2) the novelty and difficulty of the questions involved; (3) the skill requisite to perform the legal service properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and the ability of the attorneys; (10) the 'undesirability' of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

*Kerr v. Screen Extras Guild, Inc.,* 526 F.2d 67, 70 (9th Cir. 1975), *abrogated on other grounds by City of Burlington v. Dague*, 505 U.S. 557 (1992); *see also In re Bluetooth,* 654 F.3d at 942 n.7 (citing *Kerr* factors).

Plaintiffs' Counsel here expended a total of over 1,982 hours litigating the case since its inception in September 2018. *See* Tindall Dec. ¶¶ 20-21, 28; Gould Dec. ¶ 13.  As Plaintiffs' Counsel has described, the time and effort spent on this case were necessary to achieve a favorable resolution.  Plaintiffs' Counsel researched, prepared, and filed complaints in the *Joh* and *Hamilton* actions that ultimately coalesced into this case's operative complaint.  They opposed AIL's motion to compel arbitration and conducted discovery, including requesting and reviewing documents and contacting dozens of proposed Class Members.  They prepared mediation briefs and damages analyses, mediated the case, and engaged in lengthy post-mediation negotiations.  They also drafted two versions of detailed settlement agreements and supporting documents, and twice moved for

preliminary approval.  The current iteration of the Settlement also required renegotiating with AIL,
addressing the Court's distribution-related concerns, and revising, overseeing, and coordinating
KCC's notice reissuance.  *See* Dkt. # 42-1 ¶ 5; Dkt. # 42-9 ¶¶ 7-14; Tindall Dec. ¶¶ 5, 20-21, Gould
Dec. ¶ 13.

The time spent is then multiplied by reasonable hourly rates, which are determined by
considering the "experience, skill, and reputation of the attorney requesting fees." *Schwarz v. Sec'y
of Health & Human Servs.*, 73 F.3d 895, 908 (9th Cir. 1995).  The court "should be guided by the
rate prevailing in the community for similar work performed by attorneys of comparable skill,
experience, and reputation." *Id.*  Plaintiffs' Counsel's hourly rates meet this standard because they
are comparable to those of other class action attorneys with similar experience in Northern
California.  *See* Dkt. ## 42-1 ¶¶ 35-40, 42-9 ¶ 22.  Moreover, courts in other cases have found
Plaintiffs' Counsel's rates to be reasonable.  Dkt. # 42-1 ¶ 36; *see also United Steelworkers of Am. v.
Phelps Dodge Corp.,* 896 F.2d 403, 407 (9th Cir. 1990) (other cases' rate determinations
demonstrate the prevailing market rate).

Multiplying the hours that counsel reasonably spent by their hourly rates results in a total
lodestar to date of $1,266,644.  *See* Dkt. # 42-1 ¶ 41 (through September 12, 2019); Tindall Dec.
¶ 28 (to date).  Plaintiffs, therefore, seek a modest multiplier of approximately 1.13.  Tindall Dec.
¶ 28.  Several factors justify such a multiplier which, when applied, confirms the reasonableness of
Plaintiffs' fee request under the percentage method.

**Time and Labor Required.**  The time and labor required to litigate this case were
substantial.  The more than 1,982 hours expended was reasonable in light of the extensive,
contentious litigation that culminated in the original settlement, as well as the distribution-related
analysis and renegotiation required to achieve this revised Settlement.  Plaintiffs' Counsel litigated
the case efficiently, reaching the prior version of this settlement after less than a year of litigation.

**Novelty and Difficulty of the issues involved.**  This case involved novel and difficult issues,
including whether Plaintiffs' claims can and should be arbitrated, the potential liability associated
with alleged training periods, complex multi-factor tests for misclassification and training claims,

and their applicability to insurance agents who were classified as independent contractors and worked as salespersons out in the field selling insurance to prospective customers.

**The Requisite Legal Skill Necessary.** As discussed above, Plaintiffs' Counsel demonstrated legal skill in bringing this action to a favorable resolution despite the risks Plaintiffs faced—including certifying a class and demonstrating misclassification classwide. Further, Plaintiffs' Counsel effectively incorporated the Court's feedback concerning the original settlement's distribution plan to achieve this revised Settlement and present it to the Court.

**The Preclusion of Other Employment.** The 1,982.5 hours that Plaintiffs' Counsel committed to this litigation limited their ability to take on other, potentially profitable work. Tindall Dec. ¶ 18; Gould Dec. ¶ 11.

**The Customary Fee.** Courts in the Ninth Circuit have frequently approved attorneys' fees awards with lodestar-multipliers of two, three, or more. *See Van Vranken v. Atl. Richfield Co.,* 901 F. Supp. 294, 299 (N.D. Cal. 1995) (3.6 multiplier is "well within acceptable range for fee awards"); *Vizcaino v. Microsoft Corp.,* 290 F.3d 1043, 1051-52 (9th Cir. 2002) (approving 3.65 multiplier); *Steiner v. Am. Broad. Co., Inc.,* 248 Fed. Appx. 780, 783 (9th Cir. Aug. 29, 2007) (approving 6.85 multiplier, finding it "well within the range of multipliers that courts have allowed"); *Craft v. Cnty. of San Bernardino,* 624 F. Supp. 2d 1113, 1125 (C.D. Cal. 2008) (approving 5.2 multiplier and collecting cases). Notably, in *Hopkins v. Stryker Sales Corp.*, 2013 WL 496358 (N.D. Cal. Feb. 6, 2013), Judge Koh noted that "[m]ultipliers of 1 to 4 are commonly found to be appropriate in complex class action cases" and awarded a 2.76 multiplier. *Id.* at *4. Here, Plaintiffs' Counsel are seeking a multiplier of approximately 1.13, a comparatively low multiplier.

**The Contingent Nature of the Fee.** Plaintiffs' Counsel undertook this class action on a purely contingent basis, with no assurance of recovering fees or litigation costs. *See* Dkt. ## 42-1 ¶ 31, 42-9 ¶ 24. Nevertheless, Plaintiffs' Counsel expended considerable time (over 1,982 hours) and resources (over $21,000 in out-of-pocket costs) to prosecute the case on behalf of the Class.

**The Results Obtained.** As discussed above, the significant recovery ($5.75 million) obtained for the Class Members, in the face of many compounding risks, supports applying a multiplier to the lodestar.

**The Attorneys' Experience, Reputation, and Ability.** Plaintiffs' Counsel's ability, reputation, and decades of experience were critical to success in this case. Plaintiffs' Counsel have successfully prosecuted many complex employment class actions, recovering millions of dollars on behalf of employees in such cases. *See* Dkt. ## 42-1 ¶¶ 24-26, 42-9 ¶ 5; Tindall Dec. ¶¶ 10-14; Gould Dec. ¶¶ 3-6. Plaintiffs' Counsel's reputation and skill in developing evidence supporting liability, damages, and the propriety of class certification were key to reaching a favorable settlement in a case against a well-represented and well-funded defendant. Further, Plaintiffs' Counsel's experience with prior class action distributions allowed them to amend the original Settlement's distribution method to achieve a revised Settlement that addresses the Court's previous concerns.

In light of the quality of the representation provided by Plaintiffs' Counsel, the benefit to the Class obtained in the Settlement, the complexity of the case, and the risk of non-payment, a $1,437,500 fee is reasonable.

### D.    Plaintiffs' Counsel's Cost Request is Reasonable and Proper

Plaintiffs' Counsel respectfully request reimbursement of $20,996.99, which is the total of the out-of-pocket costs they had incurred as of the date Plaintiffs submitted their original final approval motion. *See* Dkt. ## 42-1 ¶¶ 44-45, 42-9 ¶ 25, 42-10. Although they have incurred $2,550.19 in additional costs since then, including delivery fees for courtesy copies, fees for legal research, and a transcript fee, Plaintiffs' Counsel are not increasing their original request for costs to ensure the Net Settlement Amount to be distributed to Class Members remains the same. Tindall Dec. ¶¶ 31-33.

The costs Plaintiffs' Counsel incurred were reasonable and necessary to the successful prosecution of this case and should be reimbursed. *Id.*; Fed. R. Civ. P. 23(h); *see also, e.g.*, *Van Vranken,* 901 F. Supp. at 299 (approving requested costs as reasonable in class action settlement). Courts within the Ninth Circuit regularly reimburse class counsel for their litigation costs—and do so in addition to awarding their attorneys' fees. *See, e.g., Ruch v. AM Retail Grp.,* 2016 WL 5462451, at *12 (N.D. Cal. Sept. 28, 2016) (awarding $18,211 in addition to fees); *Ching v. Siemens Indus., Inc.,* 2014 WL 2926210, at *8 (N.D. Cal. June 27, 2014) (awarding $9,000 in addition to attorneys' fees).

The requested costs here are recoverable because they are both reasonable and relevant to the litigation. *See In re Media Vision Tech. Sec. Litig.,* 913 F. Supp. 1362, 1366 (N.D. Cal. 1996). Plaintiffs' Counsel costs have included: (1) court filing fees; (2) mailing and serving documents; (3) copying documents; (4) conducting computer research; and (5) mediation fees. *See* Dkt. ## 42-1 ¶¶ 44-45, 42-9 ¶ 25, 42-10; Tindall Dec. ¶ 31. Plaintiffs' Counsel paid these costs without any guarantee of repayment. *See* Tindall Dec. ¶ 30. These costs were necessary to resolve this litigation. *See In re Immune Response Sec. Litig.,* 497 F. Supp. 2d 1166, 1177-78 (S.D. Cal. 2007) (finding that costs such as filing fees, photocopy costs, travel expenses, postage, online legal research fees, and mediation fees are relevant and necessary expenses in class action litigation).

### E.    Plaintiffs' Requested Service Payment is Appropriate

Finally, Plaintiffs' Counsel seek service payments in the amount of $7,500 each (or a total of $22,500, or less than ½ of 1 percent of the total Settlement) for the three class representatives. These payments would recognize the services Plaintiffs performed on behalf of the Class and their commitment to the litigation. As the declarations previously submitted make clear, Plaintiffs Joh, Smith, and Hamilton spent substantial time working with Plaintiffs' Counsel since this case began— including assisting Plaintiffs' Counsel with developing the facts of the case and speaking with Class Members, reviewing prepared documents, and regularly communicating by phone and email with Plaintiffs' Counsel throughout the litigation. Dkt. ## 42-1 ¶ 22, 42-9 ¶¶ 15-16, 42-8 ¶¶ 8-9, 42-7 ¶¶ 5-10.

The requested service payments are within the range of those awarded in this District. *See, e.g., Ross v. U.S. Bank Nat. Ass'n,* 2010 WL 3833922, at * 4 (N.D. Cal. Sept. 29, 2010) (Illston, J.) (awarding service payment of $20,000 for each class representative as fair and reasonable); *Glass v. UBS Fin. Servs., Inc.,* 2007 WL 221862, at *17 (N.D. Cal. Jan. 26, 2007) (Chesney, J.) *aff'd,* 331 Fed. Appx 452 (9th Cir. 2009) (approving $25,000 per class representative where named plaintiffs helped with informal discovery and insight into an industry); *Bellinghausen v. Tractor Supply Co.,* 306 F.R.D. 245, 268 (N.D. Cal. 2015) (Corley, M.J.) (awarding named plaintiff a total award of $15,000 to recognize service to the class and the signed release of claims in wage-and-hour class action). As Hon. Claudia Wilken reasoned in *Garner v. State Farm Mutual Automotive Insurance*

*Co.*, 2010 WL 1687832 (N.D. Cal. Apr. 22, 2010), when awarding a $20,000 incentive payment,
"[n]umerous courts in the Ninth Circuit and elsewhere have approved incentive awards of $20,000
or more where . . . the class representative has demonstrated a strong commitment to the class." *Id.*
at *17 n.8 (collecting cases).

Like the plaintiffs in *Garner,* Plaintiffs here have "demonstrated a strong commitment to the
class." *Id.* They have been involved in this litigation from the beginning, through mediation and
eventual settlement. Dkt. ## 42-1 ¶ 22, 42-9 ¶¶ 15-16, 42-8 ¶¶ 8-9, 42-7 ¶¶ 5-10. At all times,
Plaintiffs have endeavored to fairly represent the interests of their fellow AIL trainees and sales
agents, and always made decisions with the best interests of the Class in mind. Dkt. ## 42-1 ¶ 22,
42-8 ¶ 7, 42-7 ¶ 4.

In addition to the time, effort, and out-of-pocket costs that they spent on the litigation,
Plaintiffs also undertook risks in filing the case. *See* Dkt. ## 42-8 ¶ 3, 42-7 ¶ 3. They risked
negatively impacting their future employment prospects by serving publicly as class representatives
in an employment class action. Plaintiffs also faced the risks that by filing the action against AIL,
they might be responsible for having to pay a portion of AIL's costs if they were to lose the case.
Despite these risks, Plaintiffs were willing to prosecute the case through to resolution.

In sum, the time, effort, costs, and risks Plaintiffs undertook to litigate the action to a
successful resolution justify granting the requested service payments of $7,500 each.

## V.    **CONCLUSION**

For the foregoing reasons, Plaintiffs respectfully request that the Court grant final approval of
the Settlement and award Plaintiffs' requested fees, costs, and class representative service payments.


Dated:  September 18, 2020                    Respectfully submitted,


                                             **GIBBS LAW GROUP LLP**


                                             By: */s/ Steven M. Tindall*
                                             Steven M. Tindall
                                             Amanda M. Karl
                                             505 14th Street, Suite 1110

NOTICE OF MOTION AND MOTION FOR FINAL SETTLEMENT APPROVAL
CASE NO. 3:18-CV-06364-TSH

Oakland, CA 94612
Tel: (510) 350-9700
smt@classlawgroup.com
amk@classlawgroup.com

Michael A. Gould
Aarin A. Zeif
**GOULD & ASSOCIATES**
17822 E. 17th Street, Suite 106
Tustin, California 92780
Telephone: (714) 669-2850
Michael@wageandhourlaw.com
Aarin@wageandhourlaw.com

*Attorneys for Plaintiffs and the Proposed Class*

NOTICE OF MOTION AND MOTION FOR FINAL SETTLEMENT APPROVAL
CASE NO. 3:18-CV-06364-TSH