1

2

3

4                        UNITED STATES DISTRICT COURT

5                      NORTHERN DISTRICT OF CALIFORNIA

6

7    DAVID JOH, et al.,                    Case No.  18-cv-06364-TSH

8                    Plaintiffs,

9         v.                               **ORDER RE: MOTION FOR FINAL**
                                           **APPROVAL OF REVISED CLASS**
10   AMERICAN INCOME LIFE INSURANCE        **ACTION SETTLEMENT AND**
     COMPANY,                              **REQUEST FOR ATTORNEYS' FEES,**
11                                         **COSTS, AND SERVICE AWARDS**
                     Defendant.            Re: Dkt. No. 75
12

13        Before the Court are Plaintiffs' Motion for Final Approval of Revised Class Settlement and

14   Request for Attorneys' Fees, Costs, and Service Awards.  ECF No. 75.  Having reviewed the

15   Settlement Agreement and the Plaintiffs' moving papers, and after a hearing on the Motions, the

16   Court **GRANTS** them both.

17                              I.     BACKGROUND

18   **A.    Facts**

19        Plaintiffs in this action are former insurance salesperson trainees or agents of American

20   Life Insurance Company ("AIL"), who trained and worked at locations in California.  Plaintiffs

21   allege that as prospective AIL agents, trainees would undergo training that lasted one week or

22   more without earning a commission or otherwise being paid.  Sec. Am. Compl. ("SAC") ¶ 18,

23   ECF No. 30.  They allege that AIG promised prospective agents salaried positions, but then hired

24   them as commission-only employees, and failed to pay or reimburse them while they worked as

25   sales agents.  *Id.* ¶ 42.  They allege that as trainees and agents they were not paid a minimum wage

26   or overtime pay, did not receive proper meal and rest breaks, and had to pay their own work-

27   related expenses.  *Id.* ¶ 20.  They also allege that agents were subject to "chargebacks," meaning

28   that if they sold policies and those policies were later cancelled by the customer, AIL illegally

1   collected back commissions from the agents earned wages.  *Id.* ¶ 28.

2       Plaintiffs seek to represent a class of "[a]ll individuals who trained to become and/or

3   worked as sales agents in California for Defendant during the last four years prior to the filing of

4   the original Complaint."  *Id.* ¶¶ 32-33.  Plaintiffs assert the following: unlawful, unfair, and

5   fraudulent business practices in violation of California Business and Professions Code §§ 17200,

6   *et seq.*; failure to pay California overtime compensation in violation of California Labor Code §§

7   510 and 1194, and Industrial Welfare Commission ("IWC") Wage Order No. 4; failure to pay

8   minimum wages in violation of Labor Code §§ 1194 and 1197, and IWC Wage Order No. 4;

9   failure to provide meal periods in violation of Labor Code §§ 226.7 and 512, and IWC Wage

10  Order No. 4; failure to provide rest periods in violation of Labor Code § 226.7 and IWC Wage

11  Order No. 4; waiting time penalties pursuant to Labor Code §§ 202 and 203; failure to furnish

12  accurate wage statements in violation of Labor Code § 226 and IWC Wage Order No. 4; failure to

13  reimburse expenses and illegal chargebacks in violation of Labor Code §§ 221 and 2802, and IWC

14  Wage Order No. 4; failure to pay wages/commissions in violation of Labor Code §§ 221, 203 and

15  204; declaratory relief pursuant to 28 U.S.C. § 2201; and civil penalties pursuant to the California

16  Private Attorneys General Act ("PAGA"), Labor Code §§ 2698, *et seq.*

**B.      Rejection of the First Settlement Agreement**

18      On April 16, 2019, counsel for Plaintiffs and AIL participated in an all-day mediation with

19  an experienced mediator, after which the mediator proposed an agreement which the Parties

20  accepted (the "First SA").  On August 1, 2019, Plaintiffs filed a Motion for Preliminary Approval

21  of Class Action Settlement, ECF No. 39, which the Court granted on August 16, 2019, ECF No.

22  41.  On November 5, 2019, a number of class members filed an objection to approval of the

23  agreement.  ECF No. 44.  The Court held a final approval hearing on January 9, 2020, after which

24  the Court denied final approval.

25      In its order denying final approval, ECF No. 53 (the "Order"), the Court found the

26  prerequisites of Federal Rule of Civil Procedure 23(a) and (b) had been met in that: the numerosity

27  requirement had been met; there were questions of law or fact common to the Class; Plaintiffs

28  claims were typical of the Class; Plaintiffs had and would fairly and adequately represent the

United States District Court
Northern District of California

1   Class; and the questions of law and fact common to the Class predominated over questions

2   affecting only individual Class members. Order at 5-8. Additionally, Plaintiffs had met the notice

3   requirements of Rule 23(e)(1). *Id.* at 8-9; *see* Fed. R. Civ. P. 23(e)(1). Moving to Rule 23(e)(2),

4   the Court found that Plaintiffs and their counsel ("Counsel") had adequately represented the Class

5   and had negotiated the settlement in arms-length negotiations, aided by an experienced mediator

6   who had proposed the agreement which the Parties accepted. Order at 9-13; *see* Fed. R. Civ. P.

7   23(e)(2). And the Court found the adequacy of the relief satisfied Rule 23(e)(2)(C).

8   However, things hit a snag when the Court examined the objectors' arguments as to the

9   equitable treatment of class members. Rule 23(e)(2)(D) directs that, "[i]f the proposal would bind

10  class members, the court may approve it only . . . on finding that . . . the proposal treats class

11  members equitably relative to each other." Fed. R. Civ. P. 23(e)(2)(D). Here, the First SA had a

12  problem. The issue was with how the settlement value would be distributed under the agreement:

13  under California law waiting time penalties accrue only once per employee (in this case, trainee or

14  agent), but the First SA would distribute all of the settlement value *pro rata* based on the number

15  of workweeks an employee worked, and agent workweeks were far more numerous than trainee

16  workweeks. As a result, even though the Parties estimated that roughly 50% of maximum total

17  liability of Plaintiffs' claims were for California waiting time penalties and even though trainees

18  made up 25% of those claims, trainees would receive only roughly 2% of the settlement value

19  attributable to the waiting-time claims. In short, agent workweeks would wash out trainees'

20  claims to their portion of the settlement value attributable to waiting time claims. *See* Order at 14-

21  18. Accordingly, the Court found the First SA could not satisfy Rule 23(e)(2)(D). Order at 17-18.

22  After the Court's initial rejection of the First SA, Plaintiffs filed a Renewed Motion for

23  Final Settlement Approval which included additional briefing on the issue of waiting-time

24  penalties. ECF No. 60. The objector's filed an opposition to that motion, ECF No. 61, and the

25  Court denied it on April 15, 2020, ECF No. 65. Following that denial, the Parties met and

26  conferred to resolve the issues in the First SA, and they finalized the terms of a revised settlement,

27  the agreement currently before the Court (the "Settlement," or "Revised SA"). Plaintiffs

28  submitted their Motion for Final Settlement Approval (the "Motion") on September 18, 2020.

C.      **Key Points of the Revised Agreement**

The Revised SA, if approved, would dispose of all claims in this action, as well as in two related cases: *Hamilton v. American Income Life Insurance Co.*, Case No. 3:18-cv-07535-KAW (N.D. Cal.), which claims, parties, and counsel are incorporated into the operative complaint in this case, and *Golz v. American Income Life Insurance Co.*, 2:18-cv-09879 (C.D. Cal.)[1].

The Settlement Class comprises:

> All individuals who trained to become and/or worked as sales agents in California for Defendant during the last four years prior to the filing of the original Complaint in *Joh* and whose training and/or work began before August 16, 2019 (the date of preliminary approval of the earlier version of this Settlement).

Revised SA at 5-6, § II(D), ECF No. 72-1.  The Class Period is September 12, 2014 through August 16, 2019.  *Id.* at 6, § II(G).

AIL will pay $5,750,000 into the Settlement fund.  *Id.* at 8, § II(Y).  The Settlement value will be paid to approximately 7,015 class members.  Decl. of Steven M. Tindall ISO Mot. for Preliminary Approval ("Tindall Prelim. Decl.") ¶ 6, ECF No. 72-1.  The net fund amount for distribution to class members will be $4,127,531, after deductions for attorneys' fees ($1,437,500, or 25% of the fund), costs (up to $32,000), incentive/service awards for named Plaintiffs ($22,500), PAGA payment to the LWDA ($75,469), and administration costs (up to $55,000).  *Id.* at 6-7, § II(O).  All class members are eligible to receive cash awards from the fund without having to file a claim form.  *Id.* at 6-7, § II(O); *id.* at 10-12, § III(F); Tindall Prelim. Decl. ¶ 18.  In other words, checks will be sent to all class members unless they affirmatively opt out of the Settlement.

The Revised SA comprises two Settlement sub-funds, two buckets that correspond to the proportions of Plaintiffs' estimated damages.  One bucket, the Terminated Trainees and Agents Fund, will be distributed on a per-person basis to all trainees and agents who were terminated within § 203's statute of limitations period, SA at 10, § III(F), and who therefore might be entitled to waiting time penalties.  That sub-fund will consist of $1,605,500.96 and constitute

---

[1]  The objections to the First SA were brought on behalf of the objectors by counsel for the plaintiff in *Golz*.  None of the objectors has raised objections to the Revised SA.

4

United States District Court
Northern District of California

1  approximately 38.897% of the net Settlement fund, the same percentage as the percentage of total

2  estimated damages which Plaintiffs estimate are attributable to waiting-time penalties.  Tindall

3  Prelim. Decl. ¶¶ 7-15.  The other bucket, the All Trainees and Agents Fund, will be distributed to

4  all class members on a *pro rata*, workweek basis that is unchanged from the First SA.  *Id.* ¶ 16.

5  The Revised SA provides a clear procedure for class members to challenge the number of

6  workweeks allocated to them.  SA at 11-12, § III(F).

7          Like the First SA, the Settlement has a non-reversionary Settlement fund, meaning that any

8  remainder of the fund following settlement distribution will be distributed to a *cy pres* recipient

9  (Legal Aid at Work), subject to the Court's approval.  SA at 13, § III(G).

## II.   ANALYSIS

### A.   Final Settlement Approval

12          The Court may grant final approval of the Settlement once it determines that the proposed

13  class meets the requirements for certification under Federal Rule of Civil Procedure 23, and that

14  the Settlement reached on behalf of the class is fair, reasonable, and adequate.  The Court must

15  also find that adequate notice has been given to the Class.

#### 1.   Class Certification

17          Final approval of a class action settlement requires an assessment of whether the proposed

18  class satisfies the requirements of Federal Rule of Civil Procedure 23(a) and (b).  In its Order

19  addressing Plaintiffs' motion for approval of the First SA, the Court found that the proposed class

20  satisfied the requirements of Rule 23(a), and it found that "questions of law or fact common to

21  class members predominate over any questions affecting only individual members," thus

22  satisfying Rule 23(b).  Therefore, the Court found that certification of the class was appropriate for

23  settlement purposes.  *See* Order at 5-8.  Nothing has changed from the first version of the

24  settlement agreement to the revised one that would change the Court's conclusions as to the Rule

25  23(a) and (b) prerequisites.  Accordingly, the Court makes the same finding here and certifies the

26  class for settlement purposes.

#### 2.   Notice

28          Under Federal Rule of Civil Procedure 23(e), "claims, issues, or defenses of a certified

class may be settled . . . only with the court's approval."  Adequate notice is critical to the Court's approval.  *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1025 (9th Cir. 1998).  The Court previously approved the form, content, and distribution procedures of the Parties' Notice and found that the notice procedure would provide the best notice practicable.  ECF No. 73 at 3; *see* Revised SA at 17-18, § III(M) (providing for mail, e-mail, and Settlement website notice); *id.* Ex. A (the "Legal Notice"); *id.* Ex. B (the "Class Member Information Form").  On September 4, 2020, the Settlement administrator, KCC, printed and mailed notice packets to the 7,014 individuals in the Class list provided to it by AIL.  Decl. of Susanna Webb of Settlement Admin. KCC ("Webb Decl.") ¶¶ 5-6, ECF No. 75-3.  KCC also on September 4 emailed notice to 6,886 class members for whom email addresses were available, and it updated the case website (www.AILClassAction.com) and added an "Address Change Request" functionality on the site where class members can update their contact information if necessary.  *Id.* ¶¶ 8-10.  Since mailing the packets, KCC has received no packets returned by the USPS with undeliverable addresses.  *Id.* ¶ 7.  Adequate notice has been provided to Class members.

### 3.  Whether the Settlement Is Fundamentally Fair, Adequate, and Reasonable

A court may only approve a settlement if it finds that it is "fair, reasonable, and adequate."  Rule 23(e)(2).  The Ninth Circuit has long instructed district courts to consider and balance multiple factors to assess whether a settlement is "fair, adequate, and free from collusion" under Rule 23(e).  *Hanlon*, 150 F.3d at 1027.  These factors are:

> the strength of the plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed and the stage of the proceedings; the experience and views of counsel; the presence of a governmental participant; and the reaction of the class members to the proposed settlement.

*Id.* at 1026.  "This list is not exclusive and different factors may predominate in different factual contexts."  *Torrisi v. Tucson Elec. Power Co.*, 8 F.3d 1370, 1376 (9th Cir. 1993) (citation omitted).  Also, recent amendments to Rule 23 established a uniform set of factors courts should consider when determining whether a settlement is fair, reasonable, and adequate:

> (A) the class representatives and class counsel have adequately

represented the class;

(B) the proposal was negotiated at arm's length;

(C) the relief provided for the class is adequate, taking into account:

(i) the costs, risks, and delay of trial and appeal;

(ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;

(iii) the terms of any proposed award of attorney's fees, including timing of payment; and

(iv) any agreement required to be identified under Rule 23(e)(3); and

(D) the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2).  "The notes of the Advisory Committee explain that the enumerated, specific factors added to Rule 23(e)(2) are not intended to 'displace' any factors currently used by the courts, but instead aim to focus the court and attorneys on 'the core concerns of procedure and substance that should guide the decision whether to approve the proposal.'"  *In re Extreme Networks, Inc. Sec. Litig.*, 2019 WL 3290770, at *6 (July 22, 2019) (quoting Advisory Committee Notes to 2018 Amendments, Fed. R. Civ. P. 23(e)(2)).  "Accordingly, the Court applies the framework set forth in Rule 23 with guidance from the Ninth Circuit's precedent, bearing in mind the Advisory Committee's instruction not to let '[t]he sheer number of factors' distract the Court and parties from the 'central concerns' underlying Rule 23(e)(2)"—the fairness, reasonableness, and adequacy of the proposed settlement.  *In re Extreme Networks*, 2019 WL 3290770, at *6 (again quoting the advisory notes).  "[T]he underlying question remains this: Is the settlement fair?"  *In re Volkswagen "Clean Diesel" Mktg., Sales Practices, & Prods. Liab. Litig*, 895 F.3d 597, 611 (9th Cir. 2018).

As already said, the Court in its Order denying approval of the First SA found that Rule 23(e)(2) prerequisites had been met save for the last one, equitable treatment of class members. Order at 9-14.  Nothing has changed between the First SA and the Revised SA that would lead the Court to find that the requirements of Rule 23(e)(2)(A)-(C) are no longer met.  In fact, since the First SA Counsel have spent many hours renegotiating and finalizing a revised agreement which

7

United States District Court
Northern District of California

1    provides for a more equitable distribution to class members and having done so do not request

2    additional fees or costs for the effort.  Tindall Prelim. Decl. ¶ 18; *compare* ECF No. 42 at 17, *with*

3    ECF No. 75 at 12.  Plus, AIL will be paying the additional costs of the supplemental notice

4    attributable to the Revised SA.  Tindall Prelim. Decl. ¶ 18.

5        The Courts turns now to the question of whether "the proposal treats class members

6    equitably relative to each other."  Fed. R. Civ. P. 23(e)(2)(D).  The problem with the First SA was

7    that the planned distribution all of the settlement value *pro rata* based on the number of

8    workweeks an employee worked would unfairly dilute trainees' claim to the portion of the

9    settlement which the Parties attributed to trainees' waiting time claims.  The Revised SA remedies

10   that problem by separating out the portion of the Settlement value attributable to waiting time

11   claims (about 38.9%) and then distributing that sub-fund on a per-person basis, which is how

12   waiting time claims accumulate.  With this change, the Revised SA now treats all class members

13   equitably.  The Settlement is fair, reasonable, and adequate.  Accordingly, the Court approves the

14   Settlement.

15   **B.    Attorneys' Fees**

16       Counsel, as authorized by the SA, § III(J), request approval for payment of 25% of the

17   Settlement amount, or $1,437,500, as payment for attorneys' fees.  Pursuant to the Settlement, any

18   attorneys' fees or costs requested by Counsel but not approved by the Court shall be distributed to

19   class members.  *Id.*  Counsel also request $20,996.99 in litigation costs, less than what is

20   authorized by the SA.  Decl. of Steven M. Tindall ISO Mot. for Final Settlement Approval

21   ("Tindall Fees Decl.") ¶ 33, ECF No. 75-1.  And Plaintiffs request the Court approve $55,000 in

22   administration costs to KCC, SA §§ II(O), III(C), Mot. at 8, and $7,500 service/incentive

23   payments to each of the named Plaintiffs, for a total of $22,500, SA §§ III(I).

24       **1.    Legal Standard**

25       "In a certified class action, the court may award reasonable attorney's fees and nontaxable

26   costs that are authorized by law or by the parties' agreement."  Fed. R. Civ. P. 23(h).  But in

27   awarding attorneys' fees under Rule 23(h), "courts have an independent obligation to ensure that

28   the award, like the settlement itself, is reasonable, even if the parties have already agreed to an

8

amount." *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 941, (9th Cir. 2011) (citations omitted).

In this Circuit, there are two primary methods used to calculate reasonable attorneys' fees: the lodestar method and the percentage-of-recovery method. *In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 949 (9th Cir. 2015) (citing *In re Bluetooth*, 654 F.3d at 941-42). The lodestar figure represents a reasonable hourly fee multiplied by the number of hours reasonably expended on the litigation. *See Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983). It is a presumptively reasonable fee. *Clark v. City of L.A.*, 803 F.2d 987, 990-91 (9th Cir. 1986). "Because the benefit to the class is easily quantified in common-fund settlements" such as this one, courts may alternatively "award attorneys a percentage of the common fund in lieu of the often more time-consuming task of calculating the lodestar." *In re Bluetooth*, 654 F.3d at 942. Applying the percentage-of-recovery calculation method, 25% of the fund is a benchmark for a reasonable fee award, and courts should provide adequate explanation of any special circumstances justifying a significant departure. *Id.* (citations omitted). "The ultimate goal under either method of determining fees is to reasonably compensate counsel for their efforts in creating the common fund." *Knight v. Red Door Salons, Inc.*, 2009 WL 248367, at *5 (N.D. Cal. Feb. 2, 2009).

Factors courts often consider in determining the reasonableness of a percentage-of-recovery award include: (1) the results achieved; (2) the risk of continued litigation; (3) the skill required and the quality of work; (4) the contingent nature of the fee and the financial burden carried by counsel; (5) the reaction of the class; (6) awards made in similar cases; and (7) comparison with the lodestar. *Ross v. Bar None Enterprises, Inc.*, 2015 WL 1046117, at *8 (E.D. Cal. Mar. 10, 2015) (citing *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1048-50 (9th Cir. 2002)); *Lusby v. Gamestop Inc.*, 2015 U.S. Dist. LEXIS 42637, *8-9 (N.D. Cal. Mar. 31, 2015) (citing *Knight*, 2009 WL 248367, at *4). "The overall result and benefit to the class from the litigation is the most critical factor in granting a fee award." *Knight*, 2009 WL 248367, at *5 (citing *In re Heritage Bond Litig.*, 2005 WL 1594403, at *19 (C.D. Cal. June 10, 2005) (citing *Hensley v. Eckerhart*, 461 U.S. 424, 436 (1983) (holding that the "most critical factor is the degree of success obtained"))).

United States District Court
Northern District of California

United States District Court
Northern District of California

2.      **Analysis**

a.      **Results Achieved and Risks of Continued Litigation**

The Settlement amounts to approximately 16.5% of estimated total recovery.  While that is on the more modest end of the recovery spectrum, "[i]t is well-settled law that a cash settlement amounting to only a fraction of the potential recovery does not per se render the settlement inadequate or unfair."  *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 459 (9th Cir. 2000) (citation omitted).  And any recovery must be weighed against the risks of continued litigation, which in this case are several.  If Plaintiffs come out their settlement efforts empty handed, AIL is armed with a motion to compel arbitration which is already on the docket (the Parties stipulated to the Court delaying hearing on that motion to move for settlement, ECF No. 37).  Plaintiffs would be tasked with successfully certifying a class of employees whose employment with AIL spanned four years and several offices, with training practices varying among the different offices. Plaintiffs would also have to prove that the trainees qualified as employees and were entitled to pay, *see, e.g.*, *Harris v. Vector Mktg. Corp.*, 753 F. Supp. 2d 996, 1005-06 (N.D. Cal. 2010) (citing *Walling v. Portland Terminal Co.*, 330 U.S. 148 (1947)), and that AIL improperly classified agents as independent contractors and that agents were not subject to the "outside salesperson" exemption, *see, e.g.*, *Romano v. Sci Direct, Inc.*, 2018 WL 1441147, at *4-5 (N.D. Cal. Mar. 21, 2018); *see* Decl. of Michael C. Gould ISO Mot. for Final Approval ("Gould Decl.") ¶ 7, ECF No. 75-2 (discussing AIL's arguments).  Furthermore, in addition to the significant degree of risk that awaits Plaintiffs if litigation goes forward, employment class actions "are, by their nature, time-consuming and expensive to litigate."  *Aguilar v. Wawona Frozen Foods*, 2017 WL 2214936, at *3 (E.D. Cal. May 19, 2017) (citing *Hightower v. JPMorgan Chase Bank, N.A.*, 2015 WL 9664959, at *6 (C.D. Cal. Aug. 4, 2015)).  Lastly, amounts similar to or even less than the one here have been found adequate and fair by courts in this Circuit.  *E.g.*, *Mego Fin. Corp.*, 213 F.3d at 459 (settlement amount of "roughly one-sixth of the potential recovery" was fair and adequate "given the difficulties in proving the cases"); *Avila v. Cold Spring Granite Co.*, 2018 WL 400315, at *6 (E.D. Cal. Jan. 12, 2018) ("Excluding the highly uncertain PAGA penalties, the net settlement amount is roughly 16% of the more realistic maximum recovery amount.  That

10

settlement amount is within the acceptable range, albeit at the low end."); *Villegas v. J.P. Morgan Chase & Co.*, 2012 WL 5878390, at *6 (N.D. Cal. Nov. 21, 2012) (settlement of approximately 15% found to be preliminarily fair).  Against the risks and costs of continued litigation, a recovery of 16.5% estimated total damages is an adequate result, and thus these two factors weigh in favor of approval of the fee amount sought.

### b.  Skill Required and Quality of Work

"Complex class actions require unique legal skills and abilities." *Zubia v. Shamrock Foods Co.*, 2017 WL 10541431, at *17 (C.D. Cal. Dec. 21, 2017) (quoting *In re Omnivision Techs.*, 559 F. Supp. 2d 1036, 1047 (N.D. Cal. 2007)) (internal quotation marks omitted).  In this case, Counsel have brought to the table significant experience litigating class and collective wage and hour cases and produced a good recovery against some significant risks.  Steven M. Tindall, co-Counsel of record, has been practicing law for nearly 24 years, has spent a good part of his career specializing in class actions and complex litigation, and has litigated numerous employment class actions and many wage-and-hour class action cases.  Tindall Fees Decl. ¶¶ 10-4, 22.  Michael A. Gould, co-Counsel, has 29 years of experience as an attorney and has practiced employment-labor law since 1995.  Gould Decl. ¶ 3.  Gould has been Plaintiff's counsel in many wage-and-hour class actions which have been certified or settled successfully after mediation.  *Id.* ¶ 5.  Both Counsel firms have been actively involved in the case before and after the Court's rejection of the first iteration of the settlement agreement, Tindall Fees Decl. ¶¶ 5-6, Gould ¶¶ 10, 13, and despite their work renegotiating the settlement and preparing the Revised SA are not seeking fees or costs beyond what they requested in the prior iteration of the settlement, Tindall Fees Decl. ¶¶ 31-33, Gould Decl. ¶ 13.  This factor weighs in favor of the requested fee.

### c.  Contingent Nature of the Fee

"The importance of assuring adequate representation for plaintiffs who could not otherwise afford competent attorneys justifies providing those attorneys who do accept matters on a contingent-fee basis a larger fee than if they were billing by the hour or on a flat fee."  *In re Omnivision Techs.*, 559 F. Supp. 2d at 1047 (citing *In re: Wash. Pub. Power Supply Sys. Secs. Litig.*, 19 F.3d 1291, 1299-1300 (9th Cir. 1994)).  Counsel have spent upwards of 3,200 hours

11

1   litigating this case, worked on a contingent basis and thus have not yet received payment for their

2   time spent, and did not receive reimbursement for out-of-pocket costs incurred to date.  Tindall

3   Fees Decl. ¶¶ 28, 30; Gould Decl. ¶¶ 12-13.  "This substantial outlay, when there [was] a risk that

4   none of it [would] be recovered, further supports the award of the requested fees."  *In re*

5   *Omnivision Techs.*, 559 F. Supp. 2d at 1047.

6                    **d.    Reaction of the Class**

7           Notice of the Settlement was distributed to all Class members.  Webb Decl. ¶¶ 5-9.  The

8   Settlement administrator has not received any objections or any challenges to workweek

9   calculations.  *Id.* ¶¶ 11-13.  Only thirteen class members have opted out of the Settlement.  Decl.

10  of Steven M. Tindall in Further Support of Final Approval ¶ 3, ECF No 77.  That amounts to an

11  opt-out rate of about 0.18% of class members.  "Such a low opt-out rate suggests the support of

12  Class Members and counsels in favor of approval."  *O'Connor v. Uber Techs., Inc.*, 2019 WL

13  4394401, at \*6 (N.D. Cal. Sept. 13, 2019), *aff'd*, 2019 WL 7602362 (9th Cir. Dec. 20, 2019)

14  (considering an opt-out rate of "less than even .1%") (citing *Nat'l Coal. of Associations of 7-*

15  *Eleven Franchisees v. Southland Corp.*, 210 F.3d 384 (9th Cir. 2000) (finding that a 0.6% opt-out

16  rate suggests "that the settlement was a favorable one").  This factor supports an award of the

17  requested fees.

18                    **e.    Awards in Similar Cases**

19          The percentage of the Settlement fund which Counsel seeks, 25%, is the benchmark for a

20  reasonable fee award.  *In re Omnivision Techs.*, 559 F. Supp. 2d at 1047; *Six Mexican Workers v.*

21  *Ariz. Citrus Growers*, 904 F.2d 1301, 1311 (9th Cir. 1990) ("25 percent of the fund [is] the

22  'benchmark' award that should be given in common fund cases").  Thus, this factor also supports

23  an award of the requested percentage.

24                    **f.    Lodestar Cross-check**

25          "As a final check on the reasonableness of the requested fees, courts often compare the fee

26  counsel seeks as a percentage with what their hourly bills would amount to under the lodestar

27  analysis."  *Knight*, 2009 WL 248367, at \*7 (citing *Vizcaino*, 290 F.3d at 1050-51 ("Calculation of

28  the lodestar, which measures the lawyers' investment of time in the litigation, provides a check on

1  the reasonableness of the percentage award.")).  "Where a lodestar is merely being used as a cross-

2  check, the court 'may use a rough calculation of the lodestar.'"  *Aguilar*, 2017 WL 2214936, at *5

3  (quoting *Bond v. Ferguson Enters., Inc.*, 2011 WL 2648879, at *12 (E.D. Cal. June 30, 2011)).

4  Gould's firm has billed 1,245 hours so far on this matter, and Tindall's firm has billed

5  737.5 hours, for a combined total of 1,982.5 hours.  Gould Decl. ¶13; Tindall Fees Decl. ¶¶ 20, 28.

6  Having reviewed Counsel's declarations, Gould Decl. ¶¶ 13-15[2], Tindall Fees Decl. ¶¶ 20-27[3], the

7  Court finds the hours billed to be reasonable along with the rates billed based on the attorneys'

8  experience.  *De Leon v. Ricoh USA, Inc.*, 2020 U.S. Dist. LEXIS 56285, *47-48 (N.D. Cal. Mar.

9  21, 2020) (approving similar rates); *Bohannon v. Facebook, Inc.*, 2016 U.S. Dist. LEXIS 68195,

10  *16 (N.D. Cal. May 23, 2016) ("'[I]n the Bay Area, reasonable hourly rates for partners range

11  from $560 to $800, for associates from $285 to $510, and for paralegals and litigation support

12  staff from $150 to $240.'") (quoting *In re LinkedIn User Privacy Litig.*, 309 F.R.D. 573, 591

13  (N.D. Cal. 2015)); *Hefler v. Wells Fargo & Co.*, 2018 WL 6619983, at *14 (N.D. Cal. Dec. 18,

14  2018) (rates from $650 to $1,250 for partners or senior counsel, $400 to $650 for associates); *In re*

15  *Volkswagen*, 2017 WL 1047834, at *5 (billing rates ranging from $275 to $1600 for partners,

16  $150 to $790 for associates, and $80 to $490 for paralegals reasonable "given the complexities of

17  this case and the extraordinary result achieved for the Class")).

18  Based on the hourly rate charged by attorneys who worked on the case, the total lodestar

19  figure amounts to $1,266,644.  Gould Decl. ¶¶ 15-16; Tindall Fees Decl. ¶¶ 20, 24, 28.  The

20  requested fee amount is $1,437,500, which represents a multiplier of approximately 1.13 times the

21  lodestar.  This multiplier is within the range of commonly accepted lodestar multipliers.  *See, e.g.*,

22  *Bellinghausen v. Tractor Supply Co.*, 306 F.R.D. 245, 265 (N.D. Cal. 2015) ("In light of the

23  results of this action, the contingent nature of class counsel's fee arrangement, and the skill

24  required in conducting this litigation properly and succeeding at settlement, the Court believes that

25

26  [22] From Gould and Associates: Michael A. Gould, Partner, $760/hour (650 hours); Aarin A. Zeif, Attorney, $550/hour (595 hours).

27  [3] From Gibbs Law Group LLP: Steven M. Tindall, Partner, $800/hour (334.5 hours); Dylan Hughes, Partner, $750/hour (11.1 hours); Amanda Karl, Associate, $465/hour (242 hours); Aaron

28  Blumenthal, Associate, $430/hour (9.6 hours); Jeff Kosbie, Associate, $415/hour (100.2 hours); Walter Murcia, Senior Paralegal, $280/hour (40.1 hours).

the 1.49 multiplier—at the low end of the Ninth Circuit's scale—is appropriate."); *Bower v. Cycle Gear, Inc*, 2016 WL 4439875, at *7 (N.D. Cal. Aug. 23, 2016) (approving 30% fees in wage and hour case resulting in multiplier of 1.37); *Taylor v. FedEx Freight, Inc.*, 2016 WL 6038949, at *7 (E.D. Cal. Oct. 13, 2016) (approving $1,125,000 in fees—30% of settlement amount—in wage and hour case resulting in 2.26 multiplier). The lodestar confirms that the requested fee amount is acceptable, and the Court approves the attorneys' fees requested.

## C.   Litigation and Administration Costs

Plaintiffs request approval of $20,996.99 in litigation costs and $55,000 in fees for the Settlement administrator, KCC. A court may award reasonable costs that are authorized by law or by the parties' agreement. Fed. R. Civ. P. 23(h). The Revised SA provides for both amounts. Counsel do not request approval of additional costs they've incurred since they submitted their motion for approval of the First SA, and AIL will be paying whatever fees the administrator incurred beyond $55,000 (the amount allowed for in the Settlement, carried over from the First SA) as a result of the revised notice. Most of Counsel's expenses were linked to costs of mediation, ECF No. 42-1 ¶¶ 44-45; ECF No. 42-9 ¶ 25; ECF No. 42-10, which mediation ended up yielding good results for the Class. The Court finds the costs were reasonably incurred and approves them.

## D.   Incentive Awards

Plaintiffs also request that the Court approve the incentive awards of up to $7,500 for each of the named Plaintiffs. SA at 16, § III(I).

Incentives awards "are discretionary . . . and are intended to compensate class representatives for work done on behalf of the class, to make up for financial or reputational risk undertaken in bringing the action, and, sometimes, to recognize their willingness to act as a private attorney general." *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 958-59 (9th Cir. 2009) (citation omitted). The awards "are particularly appropriate in wage-and-hour actions where plaintiffs undertake a significant 'reputational risk' by bringing suit against their former employers." *Bellinghausen*, 306 F.R.D. at 267. Courts evaluate service awards "using relevant factors including the actions the plaintiff has taken to protect the interests of the class, the degree to which

14

1    the class has benefited from those actions, the amount of time and effort the plaintiff expended in

2    pursuing the litigation and reasonable fears of workplace retaliation."  *Staton v. Boeing, Co.*, 327

3    F.3d 938, 977 (9th Cir. 2003) (citation and internal quotations omitted).  "[C]ourts must be

4    vigilant in scrutinizing all incentive awards to determine whether they destroy the adequacy of the

5    class representatives."  *Radcliffe v. Experian Info. Sols., Inc.*, 715 F.3d 1157, 1164 (9th Cir. 2013).

6    "Incentive awards typically range from $2,000 to $10,000."  *Bellinghausen*, 306 F.R.D. at 26

7    (collecting cases).

8            Throughout this case, Plaintiffs Hamilton and Smith have both assisted Tindall and other

9    Counsel with the investigation, filing, and litigation of this matter.  Tindall Fees Decl. ¶ 8.  They

10   have devoted significant time assisting in the preparation and prosecution of the case, including

11   discussing the complaint with Counsel prior to its filing, reviewing the amended complaint and

12   other documents that Counsel filed in the case, and remaining in regular contact Counsel.  *Id.*

13   They have stayed apprised of the litigation throughout, including by reviewing and signing the

14   Revised SA.  *Id.*  Plaintiff Joh has spent numerous hours working with Counsel, including

15   discussing the claims in the suit, discussing AIL's liability, providing employee records, and

16   discussing AIL's business practices.  Gould Decl. ¶ 18.  Joh spent time communicating with Class

17   members to help investigate claims and calculate damage models and participated in all stages of

18   the litigation and has stayed continually informed of all aspects of the case.  *Id.*  Additionally,

19   since this is a wage-and-hour action, the named Plaintiffs faced a reputational risk in suing AIL.

20   These facts support awarding the payments.  *See Noroma v. Home Point Financial Corp.*, 2019

21   WL 5788658, at *10 (N.D. Cal. Nov. 6, 2019) (awarding $10,000 incentive award where plaintiff

22   was "actively involved" and "added substantial value" to case); *Carter v. XPO Logistics, Inc.*,

23   2019 WL 5295125, at *4 (N.D. Cal. Oct. 18, 2019) (approving awards of $20,000 each for five

24   named plaintiffs); *Taylor v. FedEx Freight, Inc.*, 2016 WL 6038949, at *8 (E.D. Cal. Oct. 13,

25   2016) (approving a $15,000 service payment for a $3,750,000 total settlement, with an average

26   award of $2,616, in part because class representative had a broader release of liability).  Finally,

27   the total amount of the three incentives awards, $22,500, is equal to 0.5% of the net Settlement

28   fund and thus does not significantly reduce the amount of fund that will be available to the rest of

the class.  *See Hightower*, 2015 WL 9664959, at *13 (granting incentive awards and noting "the enhancement awards, which constitute 1.5% of the maximum settlement amount, do not significantly reduce the amount of settlement funds available to the rest of the class") (citation omitted).  Accordingly, the Court finds that the $7,500 service payments are reasonable under these circumstances and approves them.

### III.   CONCLUSION

For the reasons stated above, the Court **GRANTS** final approval of the Class Action Settlement and Release and **GRANTS** the Motion for Attorneys' Fees, Costs, and Service Awards.  The Court **APPROVES** payment of 25% of the Settlement fund, equal to $1,437,500.00, for attorneys' fees; payment of $20,996.99 in litigation costs for Counsel; payment of $55,000.00 in costs to the Settlement Administrator, KCC; and incentive awards of $7,500.00 each to named Plaintiffs.

The Court **ORDERS** the following:

1.      Defendant shall fund the Settlement in accordance with the terms of the Settlement Agreement, and the Settlement Administrator shall make Settlement payments, approved attorneys' fees and costs, and approved incentive award payments in accordance with the terms of the Settlement Agreement.

2.      Plaintiff and all Class Members are bound by the release provisions contained in the Settlement Agreement.

3.      The Court retains continuing jurisdiction over: (a) implementation and enforcement of the Settlement Agreement pursuant to further orders of the Court, until such time as the final judgment contemplated hereby has become effective and each and every act agreed to be performed by the parties hereto shall have been performed pursuant to the Settlement Agreement, including the payments from the Settlement Fund; (b) any other action necessary to conclude this settlement and implement the Settlement Agreement; (c) the enforcement, construction, and interpretation of the Settlement Agreement, including but not limited to, any disputes concerning Class Members' release of claims; and (d) the determination of validity of opt-outs, if called upon to make that judicial determination.

4.      The above-captioned action is **DISMISSED** on the merits and with prejudice, subject to the Court retaining jurisdiction to administer and enforce the Settlement Agreement as described above.  This dismissal is without costs to any party except as specifically provided in the Settlement Agreement.

**IT IS SO ORDERED.**

Dated: January 7, 2021

THOMAS S. HIXSON
United States Magistrate Judge

United States District Court
Northern District of California